THOMPSON, ᴇᴛ ᴠɪʀ *v.* TERRY, ᴇᴛ ᴀʟ., Eᴛᴄ.
(CROSS APPEAL)

\* \* \*

CONWAY *v.* THOMPSON, ᴇᴛ ᴠɪʀ

[No. 30, September Term, 1966.]

*Decided February 14, 1967.*

482

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Amos I. Meyers* for Virginia Thompson, et vir, part of appellants. No brief and no appearance for Carter Conway, other appellant.

*James H. Langrall,* with whom were *Weinberg & Green* on the brief for Clarence E. Terry and M. Michael Maslan, Administrator of the Estate of Kenneth F. Butler, appellees.

FINAN, J., delivered the opinion of the Court.

On July 20, 1959, appellant (plaintiff below), Virginia Thompson, was a passenger in a taxicab owned by the defendant, Kenneth F. Butler, who was trading as G. I. Veteran's Cab Company. The taxicab, which was operated by appellee and cross-appellant (defendant below), Clarence E. Terry, had been hailed by plaintiff at approximately 6:00 p.m. at the intersection of Linden Avenue and Whitelock Street in the City of Baltimore. Terry proceeded across Whitelock Street and turned onto Druid Hill Avenue, a four-lane one-way south thoroughfare. According to the plaintiff's testimony, she was sitting in the rear of the taxicab, "smoking a cigarette and talking [to Terry] about the weather," when suddenly she was thrown to the floor of the taxicab, sustaining personal injuries. She did not know how the accident happened.

Terry testified that on the the day of the accident it had rained in Baltimore but had ceased shortly before the accident occurred, leaving the streets wet. Other witnesses testified that it was raining at the time of the accident. Terry further testified

that he was proceeding towards the intersection of Druid Hill Avenue and Lafayette Avenue at a speed of approximately 15 to 20 miles per hour. He was traveling in the second lane from the left or east curb and when he was about one-half block from the traffic light controlled intersection he noted that the light was green for Druid Hill traffic. Druid Hill Avenue runs downgrade as it approaches Lafayette Avenue and Terry testified that he was "gaining speed to about twenty miles per hour" as he approached the intersection. Terry further stated that as he was about to enter the intersection an automobile operated by appellant (defendant below), Carter Conway, "came right out * * * two feet into my lane * * *." He blew his horn, applied his brakes and swerved to his left in order to avoid collision with the Conway vehicle. As a result of Terry's applying his brakes and swerving to his left the taxicab went out of control, spun completely around and struck a fire hydrant located near the southeast corner of the intersection. Terry's vehicle came to rest facing in a northerly direction, its right rear upon the sidewalk against the hydrant, its left rear wheel tight against the curb and the front of the vehicle resting on the sidewalk. There was no impact between the taxicab and Conway's vehicle.

Conway testified that he was proceeding east on Lafayette Avenue, a two-way thoroughfare and stopped for a red light where Lafayette and Druid Hill Avenues intersect. Thinking that the light would change to green he proceeded forward approximately two feet and stopped. He first noticed the taxicab when it was "at least a hundred feet" from the intersection and he estimated Terry's speed at 40 miles per hour. On cross-examination the witness was reminded that in a deposition he had stated that he first saw the taxicab when it was about 20 feet from the intersection and he testified that his depositional statement was true. He further testified on cross-examination that he didn't know whether he was *estimating* or *guessing* the speed of Terry's vehicle. According to Conway's testimony it was raining at the time of the accident and his automobile did not protrude into the lane in which Terry was traveling.

The accident was investigated by an officer of the Baltimore City Police Department who arrived at the scene within min-

utes after it occurred. He testified that the posted speed limit on Druid Hill Avenue was 30 miles per hour and that Conway told him: "It was his [Conway's] fault; he went through the red light and he was awful sorry about the accident." (Conway on cross-examination admitted that he had told the officer he thought the accident was his fault, but denied telling the officer that he had gone through the red light.)

Wenceslaus Youngbar, a witness called on behalf of Terry, was traveling two cars behind the taxicab at the time of the accident. He testified that the light was green for Druid Hill traffic as he approached Lafayette Avenue. He estimated his speed at 20 miles per hour and testified that all traffic on Druid Hill Avenue was going at about the same speed. When asked about what occurred when Terry approached the intersection he stated: "A car came from Lafayette Avenue across the red light, into the path of the cab. The cab had to swerve out of the way, to avoid hitting him." He further testified that if Terry had not swerved the taxicab would have hit the Conway vehicle. It was his testimony that it was raining at the time of the accident.

The accident was also observed by one John Cernik, whose testimony can be summarized as follows: Cernik was operating his automobile in the same lane and immediately behind the taxicab; the light at Lafayette Avenue was green for the traffic proceeding south on Druid Hill Avenue and as Terry's vehicle approached the intersection, Conway's vehicle proceeded into Druid Hill Avenue against a red light. He further testified that the cab swerved to avoid hitting the intruder and he had to apply his brakes to avoid a collision with Conway's vehicle. It was the witness's testimony that he was going approximately 20 to 25 miles per hour and Terry was traveling at about the same speed. According to this witness it was raining at the time of the accident.

Suit was originally filed by plaintiffs, Virginia Thompson and Joseph Thompson, her husband, in the Court of Common Pleas of Baltimore City for personal injuries, medical payments and loss of services against defendant Conway. Thereafter Conway filed a third party claim pursuant to Rule 315 (a) against Clarence Terry and Kenneth Butler, individually and trading as G. I. Veterans' Cab Company and by amended declarations

plaintiffs filed suit against defendants Terry and Butler. Before suit came to trial defendant Butler died and M. Michael Maslan, Administrator, was substituted as a party defendant. The issues came for trial before Judge Grady and on February 3, 1966, the jury rendered verdicts in the amount of $7,500 in favor of plaintiff Virginia Thompson and in favor of plaintiff Joseph Thompson in the amount of $450 against all defendants. On February 4, 1966, all defendants filed motions for a new trial and on the same date defendants Terry and Maslan filed a motion for judgment n.o.v. On February 18, 1966, defendants' motion for judgment n.o.v. was granted and the court further ruled that unless plaintiff Virginia Thompson filed a remittitur in the amount of $2,500, defendant Conway's motion for a new trial would be granted. On February 25, a remittitur in the specified amount was filed; judgment in favor of plaintiff Virginia Thompson for $5,000 and in favor of plaintiff Joseph Thompson in the sum of $450 was made absolute.

Plaintiffs have taken this appeal from the order granting judgment n.o.v. in favor of defendants Terry and Maslan, while defendants Terry and Maslan have noted a cross-appeal. Defendant Conway has also appealed, but did not file a brief in this Court nor was he represented at oral argument. He did file a motion to adopt a part of appellants' brief and a portion of appellees' brief. The granting of this motion was opposed by counsel for both appellees and appellants; the Court denied this motion.

Appellants in support of their contention that the lower court erred in granting the judgments n.o.v. in favor of the appellees relied on a theory of the case which is contrary to both the facts as presented and the Boulevard Rule as developed in the case law of this State.

The appellants' argument simply stated is that: "The mere fact that a Motorist has a green light does not relieve him from duty of giving way to vehicles already *lawfully* in the intersection." (Emphasis supplied.) *Balto. Tr. Co. v. Presberry,* 233 Md. 303, 196 A. 2d 717 (1964). In addition to the aforementioned case the appellant cites as supporting authority *Valench v. Belle Isle Cab Co.,* 196 Md. 118, 75 A. 2d 97 (1950) and *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127

(1950). This would be well and good if we were dealing with a situation where Conway (the unfavored vehicle) was already lawfully within the intersection when Terry (the favored vehicle) entered and the unfavored vehicle was caught in the intersection with the change of signal from red to green, which is the type of situation prevailing in the cases cited by the appellant. However, in the case at bar we are presented with a materially different set of facts.

In the instant case the appellant Conway, by his own admission, had stopped on Lafayette Avenue at its intersection with Druid Hill Avenue while he had the red light facing him and, thinking that it might momentarily turn to green, intruded into Druid Hill Avenue against the red signal. The facts present a clear case for the application of the Boulevard Rule with the appellee Terry being the favored driver and the appellant Conway the unfavored driver. In *Eastern Contractors v. State,* 225 Md. 112, 123, 169 A. 2d 430, 435 (1962), this Court held that the Boulevard Rule, vesting the favored driver with the right of way, applied to intersections controlled by automatic signals with equal force as to those intersections on through highways controlled by stop signs. See generally Note 23 Md. L. Rev. 172 (1963). On the basis of the many cases decided by this Court in which the Boulevard Rule has been applied, there is no question but that Conway, the unfavored driver, was guilty of negligence as a matter of law. Conversely, the law as postulated in these cases eliminates Terry, the favored driver, as the proximate cause of the accident. *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526 (1964); *Dunnill v. Bloomberg,* 228 Md. 230, 179 A. 2d 371 (1962); *McDonald v. Wolfe,* 226 Md. 198, 172 A. 2d 481 (1961); *White v. Yellow Cab Company,* 216 Md. 286, 140 A. 2d 285 (1958); *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 121 A. 2d 188 (1956).

As has been so aptly stated by John W. T. Webb, Esq., in his excellent article "Bothersome Boulevards," 26 Md. L. Rev. 111, 117 (1966): "If the facts require application of the Boulevard Rule, the Motor Vehicle Law imposes on the unfavored driver an absolute duty to stop and an absolute duty to yield the right of way." See Motor Vehicle Laws, Art. 66½ § 193(c)(1) Code (1957).

Inherent in the granting of the motion for a judgment n.o.v for the appellee Terry was the finding by Judge Grady that Terry was not guilty of negligence within the meaning of the Boulevard Rule which controls this case. This Court is of the opinion that he was correct in this conclusion.

Counsel for appellants argued that Terry was driving at an excessive speed; that he failed to maintain a proper lookout; that instead of suddenly swerving to avoid the collision with Conway, he should have driven into the next traffic lane on his left and that as a taxicab operator he owed the passenger (appellant Virginia Thompson) the highest degree of care.

Viewing all of these contentions in the light of the Boulevard Rule, we find them unpersuasive. The only testimony indicative of excessive speed on the part of Terry was the self-serving testimony of Conway which completely disintegrated on cross-examination. Prescinding from the testimony as to speed in the instant case, we should call to mind that this Court held in *Sun Cab Company, Inc. v. Cusick, supra,* 359, that excessive or unlawful speed on the part of the favored driver "will ordinarily not be considered a contributing factor" in a Boulevard case. *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194 (1932). Certainly Terry's speed was not the proximate cause of the accident in this case. There was also no duty on Terry's part to anticipate that Conway, the unfavored driver, would not obey the traffic signal. *Schwiegerath v. Berger,* 237 Md. 68, 70, 205 A. 2d 290, 291 (1964).

The appellant stresses that Terry, the taxicab driver, being a common carrier, owed to the passenger appellant what he terms a duty of "the highest degree of care." This Court, speaking through Judge Henderson, in *Kaplan v. Solomon,* 203 Md. 131, 135, 99 A. 2d 736, 738 (1953), stated that a cab driver owed his passenger "the highest degree of care consistent with his undertaking * * *." (Emphasis supplied). There was no evidence that Terry did not observe this standard. Insofar as Terry's duty to Conway was concerned, this Court has not imposed upon a taxicab any greater duty of care as a favored vehicle in a boulevard case than an ordinary vehicle. *White v. Yellow Cab Company, supra; Sun Cab Company, Inc. v. Cusick, supra.*

A summation of the law pertaining to the issues raised by the appellant was succinctly set forth by this Court in *Dunnill v. Bloomberg, supra.* The case involved a stop sign at the intersection instead of an automatic signal. There was also some question as to parked cars obstructing the view of the operator of the intruding vehicle; otherwise the facts square with the instant case including the fact that there was no contact between the vehicles, the favored vehicle swerving from the indicated path of the unfavored vehicle. The driver of the favored vehicle ran into the curb, lost control of his vehicle and ultimately struck a tree. Chief Judge Brune, speaking for the Court, said at pp. 235-36, 179 A. 2d 374:

> "Nor does the fact that the favored driver was (as we must assume) exceeding the speed limit somewhat of itself constitute negligence or excuse the defendant's negligence, *Sun Cab Co. v. Cusick, supra; Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194; *Davis v. Taylor,* 217 Md. 84, 87, 141 A. 2d 706, and cases therein cited.

> "Nor does the fact that the two vehicles did not collide seem of any moment. The defendant's encroachment on the favored highway (even if it was more or less creeping) confronted the plaintiff with an emergency. He could not be sure that the plaintiff would stop; it seemed highly probable, to say the least, that a collision would occur if he failed to and if the plaintiff held his course. His swerve to the right when faced with the emergency situation was a perfectly natural, reflex movement caused by the defendant's negligence, and it involved no contributory negligence attributable to him. *Burhans v. Burhans,* 159 Md. 370, 150 A. 795; *Coastal Tank Lines v. Carroll,* 205 Md. 137, 106 A. 2d 98. The swerve so caused was unquestionably the cause of the plaintiff's striking the curb. Here again we assume that the defendant stopped, as he said, a foot short of the center of the street, dividing the north and southbound lanes and that he did not actually enter a southbound lane. An exceedingly nice calculation of speed, time and distance would have

been required of the plaintiff to determine that the defendant would stop and that he, the plaintiff, could safely continue without swerving. To require such calculations would be directly contrary to the often repeated policy of the boulevard rule to avoid them and would inevitably conflict with its other frequently declared purpose to expedite traffic on through highways."

Viewing all of the facts in this case in a light most favorable to the appellants, the Court must conclude that the trial judge was not in error in granting the motion n.o.v. in favor of the appellees, Terry and Maslan. There was no evidence of negligence on the part of Terry for submission to the jury. It being the opinion of the Court that judgment n.o.v. was properly granted, it becomes unnecessary to consider the issues raised by the appellees on cross-appeal.

*Judgment affirmed, with costs.*