CLEMONS, ET AL. *v.* E. & O. BULLOCK, INC. ET AL.

[No. 292, September Term, 1967.]

*Decided July 17, 1968.*

*Motions for rehearing filed July 31, August 5 and 7, 1968; denied September 9, 1968.*

588

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*John H. Bolgiano,* with whom were *John G. Prendergast, Jr.,* and *Smith, Somerville & Case* on the brief, for appellants and cross-appellees, *Oliver Walter Clemons, Sr.,* and *Oliver Walter Clemons, Jr.*

*Amos I. Meyers* for cross-appellant, James Queen.

*George D. Solter,* with whom was *A. Freeborn Brown* on the brief, for appellees and cross-appellants, James Queen and E. & O. Bullock, Inc.

Submitted on brief by *William C. Holland* for appellee, Contee Sand & Gravel Company, Inc.

SMITH, J., delivered the opinion of the Court.

This suit arises as the result of a collision at the intersection of University Boulevard and Adelphi Road near the University of Maryland in Prince George's County. The automobile owned by Oliver Walter Clemons, Sr. (Clemons, Sr.), and operated by Oliver Walter Clemons, Jr. (Clemons, Jr.), was proceeding west on University Boulevard. It was occupied by Clemons, Jr.; Clemons, Sr.; Mrs. Clemons, Sr.; Eileen Shirley Clemons; the fiancée of Clemons, Jr., Mary Lorraine Heubschman; and a friend Sally Ann Matthews. It turned left at Adelphi Road. A collision ensued between it and a dump truck operated by James Queen (Queen) and owned by E. & O. Bullock, Inc. (Bullock). The dump truck was proceeding east. William Queen, son of Queen, was a passenger in the dump truck. Mrs. Clemons, Sr. and Miss Heubschman were killed. The dump truck was hauling material for Contee Sand and Gravel Co., Inc. (Contee).

Suits were brought by Clemons, Sr.; Clemons, Jr.; and Eileen Shirley Clemons against Bullock, Contee and Queen. Third party claims were brought by Queen and Bullock against Clemons, Jr. in the Clemons, Sr. and Eileen Shirley Clemons cases. Special pleas were filed in those cases reciting that joint tort feasor releases had been consummated by which claims of Clemons, Sr. and Eileen Shirley Clemons against Clemons, Jr. had been settled, reserving rights of those parties against other persons.

Queen brought suit against Clemons, Sr. and Clemons, Jr. for the medical expenses and loss of services of his son, William Queen, a passenger in the dump truck, and on his own behalf and to the use of Glens Falls Insurance Company for his own injuries. Suit was also brought against Clemons, Jr. and Clemons, Sr. for the personal injuries of William Queen.

A directed verdict was entered in favor of Contee in all cases. A verdict in favor of the defendants Bullock and Queen was returned by the jury in the cases of Clemons, Sr. and Clemons, Jr. A verdict in favor of the defendants Clemons, Sr. and Clemons, Jr. was returned by the jury in the suits brought by Queen.

The jury returned a verdict of $500 in favor of William Queen against the defendants Clemons, Sr. and Clemons, Jr. The jury returned a verdict of $3000 in favor of Eileen Shirley Clemons against the defendants Bullock and Queen. In that case the jury also returned a verdict in favor of the third party defendant Clemons, Jr. in the third party claims of Bullock and Queen.

Appeals were filed on behalf of Clemons, Sr. and Eileen Shirley Clemons as intervening plaintiffs in their case against Bullock, Contee and Queen. A cross-appeal was filed in that case on behalf of Bullock and Queen as defendants and third party plaintiffs to the appeal of Eileen Shirley Clemons as intervening plaintiff. Clemons, Jr. appealed in his case against Bullock, Contee and Queen. Queen appealed in his case against the Clemons'. Clemons, Sr. and Clemons, Jr. appealed in the case of William Queen against them. Bullock and Queen as defendants and third party plaintiffs appealed in the case of Eileen Shirley Clemons against them.

University Boulevard is a divided highway at this intersection. There is a traffic signal.

Clemons, Jr. testified that he made the turn on a green light. He saw a car in the right hand lane of the eastbound lane. It came to a full stop. Therefore, Clemons, Jr. shifted gears and proceeded south on Adelphi Road. He did not see the dump truck.

Clemons, Sr. said the traffic signal at Adelphi Road was green. He saw the traffic light on University Boulevard go from green to amber. It was amber when it disappeared from his line of vision.

Glen W. Howard, a disinterested witness, was operating a car immediately behind the Clemons car. He had followed the Clemons automobile for a mile or mile and a half. When Clemons went through the light at the intersection it was green. He saw it turn to amber. He stated that the Queen dump truck came through a red light to strike the Clemons vehicle.

Queen claimed that he had been in the right hand or slow lane of University Boulevard, that vehicles were turning from that lane into Adelphi Road, that he changed to the fast lane, looked at the light, found it to be green, and when he was going through "like a flash this car was right in front of me." He said when he last observed the light it was green and that he was not quite a truck's length from it when he observed it. He placed his speed at about thirty miles an hour.

A State Roads Commission employee testified that the traffic lights at this intersection are green for both westbound and eastbound traffic on University Boulevard at the same time. A similar situation prevails with reference to yellow and red. The yellow or amber light on that day was five seconds in duration. The green and amber do not show at the same time. There is a solid amber light with no overlap in the signals.

### I.

Clemons, Sr. and Clemons, Jr. except to the instruction wherein the trial judge charged the jury:

> "You are further instructed that *even if you should find that Queen's truck entered the intersection on a red light,* and you shall further find that his truck was

so close to the Clemons' car that to cross in front of the truck would make an accident inevitable, then the fact that Oliver W. Clemons, Jr. did not see the truck and attempted to cross the eastbound lanes of Route 193 to complete his turn, would constitute negligence on his part. And, if you find that this negligence directly contributed to the accident, your verdict must be in favor of the defendant in his case and in the case of his father Oliver W. Clemons, Sr.

"The point that the Court wishes to further instruct you on is that *Oliver W. Clemons, Jr., even though this light was red for James Queen, had no right to attempt to cross the eastbound lanes in blind indifference to the approaching truck* and if he knew or should have known that his progress would endanger him and others, he must use reasonable care to avoid injury to himself and others including Queen, the driver of the truck. *That is to say, further, that even if he had the right of way, you find that the light was red for the truck, this does not mean that he could simply proceed across the intersection with blind indifference;* he must proceed as a reasonable prudent man would have under all of the circumstances that you find as a fact existed in the case. If you find from all of the evidence that the failure of Oliver W. Clemons, Jr. to see the defendant's truck in his attempt to cross in front of it were actions on his part which directly contributed to the accident, you must find your verdict in favor of the defendant in his case and in the case of his father Oliver W. Clemons, Sr., and even if you shall find any negligence on the part of Queen contributing to the accident, there can be in any negligence case more than one proximate cause of an accident; that is to state there may be two proximate causes of the accident, and you would have a right to find that Mr. Queen may have been negligent and his negligence contributed directly to the happening of the accident, and at the same time Oliver W. Clemons, Jr. was negligent and that his negligence may have contributed

directly to the accident. It is up to you as the jury to determine what facts you are to believe in this case and come to a decision within the law as I have instructed you, within the framework of the law as I have instructed you.

"Now, if you find from the evidence in this case that the sole proximate cause of the accident involved herein was due to the negligence of James Queen, the driver of the dump truck, then you are instructed to return a verdict in favor of Oliver W. Clemons, Jr., Oliver W. Clemons, Sr., and Eileen Clemons, that is to say, that if you find that James Queen was the only party guilty of negligence and that Oliver W. Clemons, Jr. was not guilty of any negligence which directly contributed to the accident, but James Queen's negligence was the sole cause of the accident, then your verdict should be for Oliver W. Clemons, Jr., Oliver W. Clemons, Sr. and Eileen Clemons, and also such a finding would necessarily bar James Queen from recovering in his suit." (Emphasis supplied.)

Exceptions were duly noted at the time, which exceptions were overruled on the strength of *Racine v. Wheeler*, 245 Md. 139, 144, 225 A. 2d 444, 446 (1967). This was a boulevard case in which it was contended the trial judge there committed reversible error when he instructed the jury:

1. "However, if you find that the defendant stopped her vehicle in the crossover, but in such a position that the rear of her automobile extended into the travel portion of Route 40, and that the prior movement of her automobile was not a producing cause of the accident, then there was a duty imposed on the plaintiff to keep a reasonable lookout and to exercise reasonable and ordinary care and caution for his own safety.

2. "And if you further find that the plaintiff saw, or by the exercise of ordinary care, should have seen the rear of the defendant's vehicle projecting into his lane of traffic, and that the plaintiff failed to move

from his path, when in the exercise of reasonable care he had the opportunity to do so, if the jury so finds, and he failed to do so, thereby striking the defendant's automobile, then you should find the plaintiff guilty of negligence directly contributing to the happening of the accident, and your verdict should be for the defendant."

We upheld both instructions. With reference to the first instruction we held there was evidence of contributory negligence. We stated at pages 144 and 145:

"Since the jury is free to believe only a portion of the evidence of each side the synthesis apparently accomplished by the jury is simply a manifestation of its obvious function. *Maryland Chemical Company v. Monn*, 241 Md. 127, 215 A. 2d 731 (1966).

"The comment of Chief Judge Sobeloff in *Rea Construction Co. v. Robey*, 204 Md. 94, 100, 102 A. 2d 745 (1954), is especially pertinent to the factual conflict here present:

" 'When the interplay of circumstances is susceptible of different interpretations by rational minds, the problem is essentially one for the jury; the trial judge is not permitted to transform it into a question of law for his own determination. The choice between conflicting facts and the weighing and assessing of competing inferences radiating therefrom is the jury's province.' "

Relative to the second instruction, we said, at page 145:

"We do not think the disposition of this appeal requires an historical review of the Boulevard Rule in respect of the rights and duties of the favored driver. * * * As Judge Prescott (later Chief Judge), writing for the majority in *Brown v. Ellis,* 236 Md. 487, 495, 204 A. 2d 526 (1964) said:

" 'The question in regard to contributory negligence presents a different picture. Appellant contends that he is within the boulevard rule on this

issue as a matter of law. There can be little doubt that the decisions of this Court have jealously guarded and upheld the favored driver's right of way in boulevard cases. In fact, the Maryland decisions seem to go as far as any of our sister States in upholding such rights of way. However, no decision of this Court has ever stated that such a favored driver has a complete and absolute right of way which relieves him of all duty to exercise reasonable and ordinary care for his own safety. On the contrary, this Court, as early as 1939, stated in *Greenfeld v. Hook,* 177 Md. 116, that "the traveller on the favored highway [does not have] an absolute, unqualified, and complete right of way, at all times and under all circumstances, over persons who have lawfully entered the street, nor [can he] proceed thereon in blind indifference to the danger to which his progress may expose others," but, "where a traveller on a favored highway knows or should know that his progress will endanger a traveller entering the same from a restricted highway, he must exercise reasonable care to avoid injuring him." ' "

In *Racine v. Wheeler, supra,* the instruction presupposed that the defendant's vehicle had *lawfully* entered the intersection. In this case the instruction presupposes an *unlawful* entry on the part of Queen into the intersection.

We think this case is analogous to *Eastern Contractors v. State,* 225 Md. 112, 169 A. 2d 430 (1961). This was a traffic light case. Judge Henderson (later Chief Judge) speaking for this Court said at pages 120 and 121:

"But instead of instructing the jury that the case turned on who had the right of way, the trial court gave the following instruction:.

" 'The Court further instructs you, at the request of Buckley & Company, that an operator of a vehicle, even though given the green or go signal at an intersection, is required to use due care and cau-

tion to see that traffic in the intersection is such that he can proceed with safety and he must regard and heed traffic conditions, even though he has the green light. Therefore, even if you find it a fact that the Eastern Contractors' vehicle had the green light, and you also find that the operator thereof, Preston Jeffers, failed to observe the conditions of the traffic about him, and did not pay proper attention to approaching or crossing vehicles, or in any other respect failed to use due care, then your verdict must be against Eastern Contractors and Preston Jeffers, because you would have determined that he was negligent in the operation of his truck.'

"It is perfectly clear, as the first sentence of the instruction states, that a driver having a green light in his favor cannot ignore traffic in the intersection when the light changes.

\* \* \*

"But the second part of the instruction does not follow from the first. The jury was instructed that if the favored driver failed to observe the conditions of the traffic about him and did not pay proper attention to approaching vehicles, or in any other respect failed to use due care, the verdict must be against him. We may note that the instruction is incomplete in that it leaves out any reference to *proximate cause*. In effect, the court was directing a verdict against the favored driver, for Jeffers admitted that he did not see the payscraper 'approaching' the intersection, although it may be inferred that it was at a substantial distance at the time he started across. This goes far beyond the statutory duty to yield the right of way to vehicles 'lawfully' in the intersection and imports that he was not entitled to rely upon his right of way even as to vehicles unlawfully entering the intersection against a red light. We think that is not a correct statement of the law. We think the applicable rule of law is well settled under the Maryland cases." (Emphasis supplied.)

In *Schwiegerath v. Berger,* 237 Md. 68, 205 A. 2d 290 (1964), there was a motion for summary judgment on behalf of one of the defendants. Chief Judge Henderson there said at page 70:

> "Upon the undisputed facts we think the case is properly one for summary judgment. Cf. *Evans v. Johns Hopkins Hosp.,* 224 Md. 234, and *Sumner v. Travelers Indemnity,* 235 Md. 480. We think it is clear under the authorities that the proximate cause of the accident was the sudden and unlawful entry of the Krebs' car into the intersection against the red light. See Code (1957), Art. 66½, sec. 193(a)(1). Berger was not obliged to anticipate the eventuality that happened. *Eastern Contractors v. State,* 225 Md. 112, 121; *Baltimore Transit Co. v. Presberry,* 233 Md. 303, 306; cf. *Schwartz v. Price,* 215 Md. 43, 48. The cases of *Valench v. Belle Isle Cab Co.,* 196 Md. 118, and *Sklar v. Southcomb,* 194 Md. 626, are readily distinguishable. The fact that Berger did not see the other car sooner is immaterial. If he had seen it he could have properly assumed that it would remain in a place of safety and yield the right of way as the law required."

This case is also very similar to *Thompson v. Terry,* 245 Md. 480, 226 A. 2d 540 (1967). In that case Thompson was a passenger in the taxicab of Terry. Terry claimed to have a green light. There was testimony that Conway had a red light. At 245 Md. 485, we said:

> "The appellants' argument simply stated is that: 'The mere fact that a Motorist has a green light does not relieve him from duty of giving way to vehicles already *lawfully* in the intersection.' (Emphasis supplied.) * * * This would be well and good if we were dealing with a situation where Conway (the unfavored vehicle) was already lawfully within the intersection when Terry (the favored vehicle) entered and the unfavored vehicle was caught in the intersection

with the change of signal from red to green, which is the type of situation prevailing in the cases cited by the appellant. However, in the case at bar we are presented with a materially different set of facts.

"In the instant case the appellant Conway, by his own admission, had stopped on Lafayette Avenue at its intersection with Druid Hill Avenue while he had the red light facing him and, thinking that it might momentarily turn to green, intruded into Druid Hill Avenue against the red signal. The facts present a clear case for the application of the Boulevard Rule with the appellee Terry being the favored driver and the appellant Conway the unfavored driver. In *Eastern Contractors v. State*, 225 Md. 112, 123, 169 A. 2d 430, 435 (1962), this Court held that the Boulevard Rule, vesting the favored driver with the right of way, applied to intersections controlled by automatic signals with equal force as to those intersections or through highways controlled by stop signs. See generally Note 23 Md. L. Rev. 172 (1963). On the basis of the many cases decided by this Court in which the Boulevard Rule has been applied, there is no question but that Conway, the unfavored driver, was guilty of negligence as a matter of law. Conversely, the law as postulated in these cases eliminates Terry, the favored driver, as the proximate cause of the accident. *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526 (1964); *Dunnill v. Bloomberg,* 228 Md. 230, 179 A. 2d 371 (1962); *McDonald v. Wolfe,* 226 Md. 198, 172 A. 2d 481 (1961); *White v. Yellow Cab Company,* 216 Md. 286, 140 A. 2d 285 (1958); *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 121 A. 2d 188 (1956).

"As has been so aptly stated by John W. T. Webb, Esq., in his excellent article 'Bothersome Boulevards,' 26 Md. L. Rev. 111, 117 (1966): 'If the facts require application of the Boulevard Rule, the Motor Vehicle Law imposes on the unfavored driver an abright of way.' See Motor Vehicle Laws, Art. 66½ § solute duty to stop and an absolute duty to yield the

193(c)(1) Code (1957)." See also *Balto. Transit Co. v. Putnam,* 250 Md. 19.

Paraphrasing Judge Henderson, the court in the case before us was in effect directing a verdict against the favored driver since there was no testimony from Clemons, Jr. that he saw Queen. The trial court's instruction imports that he was not entitled to rely upon his right of way even as to vehicles unlawfully entering the intersection against a red light. Accordingly, we believe it clearly in error.

## II.

The plaintiffs Clemons requested the court to instruct the jury:

> "If you find from all of the evidence in this case that the dump truck * * * entered the intersection * * * at a time when the automatic traffic signal was red for the eastbound traffic on University Boulevard, then you are instructed as a matter of law to return verdicts in favor of the plaintiffs, Oliver W. Clemons, Sr., Oliver W. Clemons, Jr., and Eileen Clemons in their cases as against James Queen and as against E. & O. Bullock, Inc."

The trial court declined to so instruct the jury, again citing *Racine v. Wheeler, supra.* The instruction should have been granted. *Eastern Contractors v. State, supra; Thompson v. Terry, supra.*

## III.

Queen excepts to the failure of the court to instruct the jury that Clemons, Jr. was guilty of negligence as a matter of law. In the light of the testimony of Howard that the light was green as to Clemons, Jr. and red as to Queen, we could not hold Clemons guilty of negligence as a matter of law.

## IV.

Queen also excepts to the court's refusal to instruct the jury that there was no evidence in the case from which the jury could conclude that Queen was guilty of contributory negligence.

From Howard's testimony the jury could conclude that Queen went through a red light.

## V.

The plaintiffs Clemons contend that the trial court erred in directing a verdict in favor of Contee. The vehicle in question was owned by Bullock. Queen was hired by Bullock. Queen was paid by Bullock. Queen normally reported to the Contee plant. Contee specified the materials he was to deliver. Queen selected his own route. He could make as many or as few trips as he wanted per day. At the time of the accident he was returning from having delivered a load in Washington. He was not on the normal route to the plant of Contee, having varied his trip for the purpose of buying a hamburger for his young son who was with him. This detour was not substantial, however, since Queen indicated that the difference in mileage was about a block.

The number of trips to be made was determined by Queen. If he wished, upon completion of a delivery to go on home, that was his privilege. The compensation received by Queen was dependent upon the number of trips that he made. In each instance delivery tickets were given Queen by the Contee dispatcher. One copy was left with the recipient of the load, one copy was returned to Contee and the third copy was delivered to Bullock.

There was no showing as to the agreement that existed between Contee and Bullock.

In *Keitz v. National Paving Co.*, 214 Md. 479, 134 A. 2d 296 (1957), speaking through Judge Prescott (later Chief Judge), we said, at page 491:

"'* * * it has been stated by this Court that there are at least five *criteria* that may be considered in determining the question whether the relationship of master and servant exists. These are: (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is a part of the regular business of the employer. Standing alone, none of these *indicia*, excepting (4),

seems controlling in the determination as to whether such relationship exists. The decisive test in determining whether the relation of master and servant exists is whether the employer has the *right to control and direct the servant in the performance of his work and in the manner in which the work is to be done.* It will be noted from the above, it is not the manner in which the alleged master actually exercised his authority to control and direct the action of the servant which controls, but it is his *right* to do so that is important. *Sun Cab Co. v. Powell,* 196 Md. 572, 578, 77 A. 2d 783; *Charles Freeland v. Couplin,* 211 Md. 160, 169, 170, 126 A. 2d 606." (Emphasis in the original statement.)

It is the right to control rather than the actual exercise of control that is indicative of who is the master. The obligations of master are not assumed by one who merely directs the operator of a hired vehicle where and when it should be driven, or, in the case of a truck, what to haul. See 35 Am. Jur., *Master and Servant,* § 2, and cases collected in 17 A.L.R.2d 1388, 1410-1414 (1951).

Applying Chief Judge Prescott's criteria, the selection and engagement of the servant, the payment of wages, the power to discharge and the control, if any, over the number of loads to be carried by Queen were all in Bullock. The deliveries were a part of the regular business of both Contee and Bullock. We believe the court was correct in directing a verdict on behalf of Contee.

## VI.

Bullock and Queen filed cross-appeals in the Eileen Shirley Clemons case alleging that the trial court erred in refusing to grant the motion for judgment *n.o.v.* by Queen as defendant and/or third party plaintiff. They argue that if Queen were free from negligence and the case should not have been submitted to the jury on the issue of his negligence, then the lower court was in error in refusing to enter the judgment *n.o.v.* The record does not establish Queen to have been free from negligence as a matter of law.

They further argue that if there were sufficient evidence of negligence on the part of Queen to allow the jury to consider his negligence and if we hold that Clemons, Jr. was guilty of contributory negligence as a matter of law, or, in the alternative, that the jury verdict finding him guilty of negligence should stand, then the trial court erred in not granting the motion for a judgment *n.o.v.* by Queen and Bullock as third party plaintiffs and by not entering judgment in their favor as third party plaintiffs against the third party defendant in the amount of $1500. The record does not establish that Clemons, Jr. was guilty of contributory negligence as a matter of law. Under Code (1957), Art. 50, § 19, if the jury found Clemons to have been negligent the claim of Eileen Shirley Clemons against Queen would be reduced by the amount paid by Clemons, Jr. to her or in any amount or portion by which the release provides that the total claim shall be reduced, if greater than the consideration paid. If the jury shall find that Queen came through the red light, then Queen is guilty of negligence as a matter of law. If the jury shall find that Queen did not come through the red light, then it may consider whether Clemons was guilty of any negligence. If Clemons is determined to be guilty of negligence, then it will be necessary to determine the effect of the release. See *Brooks v. Daley,* 242 Md. 185, 218 A. 2d 184 (1966).

## VII.

Counsel for Queen and Bullock in their brief said:

"It is difficult even for the trained, sophisticated mind of an active trial lawyer to understand and apply the principle of contribution among joint tort feasors, and to expect this of a jury in the case of multiple consolidated claims without specific issues or instructions to guide them would be expecting too much."

At the oral argument comment was made that certain of the parties desired submission of the case to the jury on special issues and this could not be accomplished because all parties would not agree.

As far back as *Alexander v. Tingle,* 181 Md. 464, 30 A. 2d 737 (1943), we commented on the wisdom of framing special

issues for submission to the jury. In *Wright v. Baker,* 197 Md. 315, 79 A. 2d. 159 (1951), we said at page 317 :

"The appellant contends that the court erred in submitting the case to the jury on issues, to which action he objected by special exception. Under Rule 7, III. Trials, Rules of Practice and Procedure, the matter is clearly within the discretion of the trial court, and we find no error. *Issues* are authorized by the rule and *are peculiarly appropriate in consolidated cases."* (Emphasis supplied.)

> *Judgments in Nos. 92097 and 92254 in favor of E. & O. Bullock, Inc. and James Queen, and in No. 93280 in favor of William Queen, reversed and remanded for new trial.*
>
> *Judgment in No. 98910 in favor of Eileen Clemons affirmed and judgment in favor of Oliver Clemons, Jr., neither affirmed nor reversed, and remanded for further proceedings in accordance with this opinion.*
>
> *Judgment in No. 93279 affirmed and judgment in No. 93280 against James Queen affirmed.*
>
> *Costs to be paid by E. & O. Bullock, Inc., and James Queen.*