EDWARD L. KLARMAN *v.* JOSEPH HARASZTI

[No. 390, September Term, 1974.]

*Decided February 14, 1975.*

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

484

*Francis J. Meagher,* with whom were *Goodman, Meagher & Enoch* on the brief, for appellant.

*Hartman J. Miller,* with whom was *Eugene A. Edgett, Jr.,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

The interesting question presented in this appeal concerns the right of a motorist facing a yellow traffic signal to enter an intersection and the interplay of that right with the right of a motorist entering from the opposite direction and making a left turn therein. We hold that a motorist facing the yellow light is entitled to enter the intersection and having thus entered the intersection legally is entitled to proceed through regardless of a change in the traffic signal from yellow to red during the course of his passage.

The rights and duties of parties at intersections controlled by signal lights are statutory and governed by Md. Code, Art. 66½, § 11-202 (1970 Repl. Vol.) which provides as follows:

> " (2) Steady yellow indication.
>
> " (i) Vehicular traffic facing a steady yellow signal is thereby warned that the related green movement is being terminated or that a red indication will be exhibited immediately thereafter when vehicular traffic shall not enter the intersection.
>
> " (ii) Pedestrians facing a steady yellow signal, unless otherwise directed by a pedestrian control signal as provided in § 11-203, are thereby advised that there is insufficient time to cross the roadway before a red indication is shown, and no pedestrian shall then start to cross the roadway."

In construing the meaning of the statute we are assisted by written reports from two legislative committees as well as the history of the Uniform Act of which § 11-202 is a part. Such a rich source of material is not frequently available to

show the meaning of a Maryland statute. Before reviewing those materials, however, we pause to quote the instant statute as it existed prior to the enactment of the statute in its present form.[1]

"§ 193. *Traffic-control signal legend.*

\* \* \*

"(b) *Amber alone or 'caution' when shown following the green or 'go' signal.*

"(1) Vehicles facing the signal shall stop before entering the nearest crosswalk at the intersection, but if such stop cannot be made in safety a vehicle may be driven cautiously through the intersection.

"(2) Pedestrians facing such signal are thereby advised that there is insufficient time to cross the roadway, and any pedestrian then starting to cross shall yield the right-of-way to all vehicles."

We make two observations: (1) that in the present statute although a pedestrian facing a yellow light is directed to stop, a motor vehicle in such a position is not, and (2) that the specific requirement that a motorist facing a yellow light shall stop unless the stop could not be made in safety was omitted by the legislature in the current statute.

On September 1, 1968, a special committee appointed by the Legislative Council to revise the Motor Vehicle Laws of the State of Maryland, popularly known as the Warnken Commission, reported that the rules of the road in the Maryland Code, a portion of which we are now considering, should be made to conform as closely as possible with the provisions of the Uniform Vehicle Code. The committee report stated:

"This is the area of vehicle law in which the need for national uniformity is greatest, and the UVC [Uniform Vehicle Code] has set the standard."

1. § 11-202 was enacted by Chapter 534 of the Laws of Maryland 1970. Its effective date was January 1, 1971. The prior statute was in Md. Code, Art. 66½, § 193 (1967 Repl. Vol.) and was enacted by the Laws of Maryland 1943, Chapter 1007.

On October 7, 1969, a special legislative committee reported after its several-month review of the Warnken Commission report. That committee made a number of changes with reference to the rules of the road but no changes were made in § 11-202. It will be observed that the Maryland statute as it currently reads corresponds exactly with the provisions of the Uniform Vehicle Code. The historical note following § 11-202 of the Code is interesting and indeed appears to us to be dispositive of the rights of a motorist facing a yellow light. Traffic Laws Annotated (1972 Ed.) on the Rules of the Road § 11-202 and its Historical Note state as follows:

"§ 11-202 — *Traffic-control Signal Legend*

"(b) Steady yellow indication [40]

"1. Vehicular traffic facing a steady yellow signal is thereby warned that the related green movement is being terminated or that a red indication will be exhibited immediately thereafter when vehicular traffic shall not enter the intersection.

### *Historical Note*

"Footnote 40, which has been in the Code in its present form since 1934 provides:

"It is recommended that the color yellow be used only before red. If yellow is used following the red, traffic facing the signal has a tendency to start before the green signal appears, causing interference with cross traffic clearing the intersection.

"The historical development of Code provisions on the meaning of a yellow signal following a green one indicates a significant change in the behavior expected of a driver facing such a signal.

"The difference between the 1962 Code and the original Code provisions on the meaning of a yellow signal can readily be seen by comparing the two. UVC Act IV, § 12(a) (Rev. ed. 1930) provided:

"Yellow or 'Caution,' when shown alone following the green or 'Go'—Traffic facing the signal shall stop before entering the nearest crosswalk at the intersection unless so close to the intersection that a stop cannot be made in safety.

"The 1934 and 1938 Codes made the 1930 provision on yellow signals more explicit. Those editions provided:

"(b) Yellow alone or 'Caution' when shown following the green or 'Go' signal.

"1. Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection, but if such stop cannot be made in safety a vehicle may be driven cautiously through the intersection.

"UVC Act V, § 32(b) 1 (Rev. ed. 1934); UVC Act V, § 34 (b) 1 (Rev. ed. 1938). The first Code provisions on a steady yellow signal following a green one thus provided that, as a general rule, drivers should not proceed through the intersection. The 1962 Code, on the other hand, provides that a steady yellow signal warns a driver that a red signal will be exhibited immediately at which time he shall not enter the intersection. The tacit assumption of the 1962 Code is, of course, that a driver may lawfully enter the intersection on a yellow signal and lawfully continue across it even though a red signal may be shown during the time of such crossing. See UVC § 11-202(a)1 (Rev. ed. 1962) requiring drivers facing a green signal on an intersecting street to yield the right of way to vehicles 'lawfully within the intersection.'

"Actually, except for circumstances that would make it unsafe to stop, the original Code provisions on yellow signals required the same conduct on the part of drivers as the Code provision on red or stop

signals. Thus, it was not surprising that in 1944, the National Committee substantially amended the Code's yellow signal provision:

"Vehicular traffic facing the signal is thereby warned that the red or 'Stop' signal will be exhibited immediately thereafter and such vehicular traffic shall not enter *or be crossing* the intersection when the red or 'Stop' signal is exhibited. (Emphasis added.)

"UVC Act V, § 34(b)1 (Rev. ed. 1944). This provision remained in the Code without amendment until 1962 and, in fact, served as the basis for the 1962 Code provision. UVC Act V, § 34(b)1 (Rev. eds. 1948, 1952); UVC § 11-202(b)1 (Rev. eds. 1954, 1956, 1962). The 1962 Code, however, contains one very substantial change. *The italicized clause, 'or be crossing,' was deleted by the National Committee in 1962 so that a driver may now both legally enter the intersection on yellow and legally clear the intersection for use by traffic on intersecting streets even though a red signal is displayed while he is in the intersection.* See discussion by Fisher, *Vehicle Traffic Law* 417 (1961)." (Emphasis added).

We have found four cases construing the yellow light portion of the statute as it now reads in Maryland. They all support our holding. *Fuentes v. Panella,* 120 Cal. App. 2d 175, 260 P. 2d 853 (1953); *Prather v. Phillis Wheatley Association,* 8 Ohio App. 2d 91, 193 N.E.2d 290 (1963); *Stann v. Taus & Associates,* 79 Ohio L. Abs. 217, 151 N.E.2d 756 (1958); *Case v. Carter,* 103 Ohio App. 11, 142 N.E.2d 670 (1956).

## I FACTS

The record shows that Edward L. Klarman, the appellant, brought suit in the Superior Court of Baltimore City to recover damages as the result of an automobile accident which occurred about 11 p.m. on January 25, 1971. He was

proceeding south on Moravia Road at its intersection with Sinclair Lane when Dr. Joseph Haraszti, the defendant/appellee who had been proceeding in a northerly direction on Moravia Road was making a left turn into Sinclair Lane.

The intersection was controlled by a traffic light with a sequence of signals from green to amber to red to green with no left turn arrows or breaks in the sequence for left turns. There was testimony which would support a finding that Klarman, the appellant (1) entered the intersection when the light facing him was green, (2) entered the intersection when the light facing him was yellow, and (3) entered the intersection when the light facing him was red. There was testimony that Dr. Haraszti entered the intersection when the light facing him was green and that he entered the intersection when the light facing him was yellow. The trial court in pertinent part instructed the jury in his supplemental instructions as follows:

"Ladies and gentlemen of the Jury, I would like to amplify my instructions to you after conferring with both Counsel, amplify my instructions to you in this respect: if you should find from the evidence that the Plaintiff, Mr. Klarman, entered the intersection with the green light in his favor, then your verdict should be for the Plaintiff. If you should find from the evidence that the Plaintiff, Mr. Klarman, entered the intersection against the red light, your verdict should be for the Defendant. Now, if you should find that the Plaintiff, while proceeding south on Moravia Boulevard had the amber, that is, the yellow light facing him at the time he was entering the intersection but he could not stop with safety, then he had a right to proceed cautiously through the intersection and in that situation he would be considered as lawfully within the intersection. Now, if you should find from the evidence that the Plaintiff, Mr. Klarman, had the yellow or amber light in his face as he was about to

enter the intersection and that he could have with the exercise of reasonable care brought his vehicle to a safe and complete stop prior to entering the intersection and thereby avoiding the collision, then you should find for the Defendant." [2]

The appellant promptly objected to these instructions on the basis that the court had failed to advise the jury that the plaintiff had a right to proceed cautiously through the intersection if he faced a yellow light and having entered the intersection lawfully the proximate cause of the accident was the appellee's negligence.

## II APPLICATION OF THE LAW

On appeal appellant argues that he had the right to enter the intersection on the yellow light and, therefore, the sole proximate cause of the collision was the appellee's left turn which was made at a time when the appellant's vehicle was "within the intersection or so close thereto as to constitute an immediate hazard." Md. Code, Art. $66^{1}/_{2}$, § 11-402.

As we have indicated we agree that the trial court's instruction was erroneous. It is apparent that this instruction was based upon the prior statute which required the appellant to stop if he faced a yellow light unless he could not do so with safety. The court should have granted appellant's requested instruction No. 11: "If you find the plaintiff entered the intersection while the traffic light for him was yellow, then your verdict must be for the plaintiff as a matter of law for the proximate cause of the collision, then, would be the action of the defendant making a left turn" or should have covered the legal principle in similar language.

The history of the statute reveals that the intent of the writers of the Uniform Code, which must be imputed to the Maryland Legislature, was to all but equate the rights of a motorist facing a yellow light to those of a motorist facing a

---

**2.** In the regular charge the trial judge had read § 11-202 in its current form. We do not think that is sufficient to overcome the error in the final charge.

green light. Although the Court of Appeals has applied the boulevard rule to a motorist facing a green light, *Eastern Contractors, Inc. v. State,* 225 Md. 112, 169 A. 2d 430 (1961) and to a motorist making a left turn insofar as a motorist facing a red light was concerned, *Clemons v. Bullock,* 250 Md. 586, 244 A. 2d 240 (1968), it has yet to decide the applicability of the boulevard rule with reference to a left turning motorist and a motorist entering the intersection on a yellow light. We, like the Court of Appeals in *Bennett v. Bass,* 248 Md. 260, 235 A. 2d 715 (1967) do not have to decide that question. In that case both motorists entered the intersection on a green light and one made a left turn in front of the other. The Court said at 265:

"In order for us to affirm the lower court which resolved the case in the appellee's favor, it is unnecessary for us to consider his contention that the Boulevard Rule should apply. Unquestionably, the instant case has some overtones found in those cases wherein the Boulevard Rule is applicable. However, it does not present the classic situation of intersection intrusion by the unfavored vehicle into the path of the favored vehicle wherein the Boulevard Rule comes into play. See, *e.g., Thompson v. Terry,* 245 Md. 480, 226 A. 2d 540 (1967).

"The record fails to reveal any evidence of excessive speed. Although it is true that appellee's vision, like that of Mrs. Ellis, was obstructed by the large truck standing in the eastbound left-turn lane of Eastern Avenue, the light had been green for some time and the appellee had the right to assume that another vehicle would not unexpectedly pull into his course of travel. The situation is therefore distinguishable from *Valench, supra,* where the light had just turned green and the defendant proceeded blindly into the intersection while a streetcar blocked his view of vehicles attempting to clear the intersection as the light changed. Under

> those circumstances, the Court indicated that a motorist at a stop light waiting for it to turn green should expect that a vehicle on the other road might still be crossing the intersection when the light changed. Furthermore, the record is devoid of evidence that the appellee was inattentive in the operation of his vehicle."

In the instant case, like *Bass*, there was no evidence that the appellant was inattentive in the operation of his vehicle. There was evidence that the appellant "came quite fast and it seemed to me he came through the light and the whole wreckage came toward me." "This little car [the appellant's] came from my left very fast." "He seemed to come from nowhere. I just caught him out of the corner of my eye. He just shot in there like a bullet." Such statements, however, are mere "general adjectival descriptions" and as such are not sufficient alone to establish that the appellant was traveling at an excessive speed. *See: Fowler v. Smith*, 240 Md. 240, 246, 213 A. 2d 549 (1965); *Jones v. Baltimore Transit Company*, 211 Md. 423, 428, 127 A. 2d 649 (1956); *Willey v. Glass*, 242 Md. 156, 163, 218 A. 2d 212 (1966) (dicta).

Both parties to the appeal rely on the case of *Durham v. United States*, 174 F. Supp. 410 (D. Md. 1959) in which a speeding vehicle entered an intersection on a yellow light and collided with a vehicle making a left turn. The Court held the speed and the turn were both a proximate cause of the accident. We find the case of no value here because there is no evidence sufficient to establish that the appellant was speeding when he entered the intersection and because the Maryland statute on the right of motorists facing a yellow light has been substantially changed since *Durham* was decided as discussed above.

Appellant also contends that the trial judge erred in refusing to direct a verdict in his favor, in refusing to instruct the jury that the appellee was guilty of negligence as a matter of law and that the appellant was free from contributory negligence as a matter of law. The arguments are devoid of merit because the witness Kammerman

testified the appellant entered the intersection when the light facing him was red. Therefore instructions such as these would have been improper. *Clemmons v. Bullock, supra.* Appellant also argues that the trial court's instructions were confusing because of the change between those he gave originally and those he gave in his supplemental instructions. We need not discuss the issue because it is very unlikely to be repeated on retrial.

> *Judgment reversed.*
> *Costs to abide result of new*
> *trial.*