JOSEPH T. SHAVER ET UX. *v.* LYNN RAYMOND DAVIS

[No. 516, September Term, 1976.]

*Decided February 7, 1977.*

The cause was argued before POWERS, MENCHINE and MOORE, JJ.

*Thomas V. Friedman,* with whom were *Rosen, Esterson & Friedman* on the brief, for appellants.

*E. Dale Adkins, III*, with whom were *Robert H. Bouse, Jr.*, and *Anderson, Coe & King* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Trial of this suit of Joseph T. Shaver against Lynn Raymond Davis having resulted in a jury verdict in favor of the defendant, Shaver and his wife, who joined him in a loss of consortium claim, have appealed from the judgment entered on that verdict. Trial was held in the Circuit Court for Howard County in January, 1976, Judge George B. Rasin presiding.

We need to consider only the assertion by the appellants that the trial judge erred in his instruction to the jury on the law relating to automatic traffic signals. The factual basis for the instruction is virtually undisputed. At about 10:00 A.M. on 18 December 1973, Mr. Shaver was driving north on U. S. Route 1, a north-south dual highway in Howard County, approaching its intersection with Waterloo Road, also a dual highway, which runs generally east and west. The intersection is controlled by a traffic light. There was a stipulation describing the times and sequences of the various colors, but the details are not significant to the question in this case.

As Mr. Shaver approached the intersection the light was red. He stopped. When the light turned green he proceeded north into the intersection. Mr. Davis was driving east on Waterloo Road. Davis testified that as he approached the intersection the light was green, but turned to amber when he was 30 feet from the intersection. He said that the light was still amber when he entered the intersection, and he proceeded across. The two vehicles collided. A police officer testified that the impact occurred at the intersection of the left eastbound lane of Waterloo Road and the right northbound lane of Route 1.

In his instructions on the law governing traffic controlled by lights, the judge read to the jury the applicable subsections of Code, Art. 66$^1$/$_2$, § 11-202, relating to a green signal, a yellow signal, and a red signal. He explained the

meaning of the statute relating to the yellow signal by saying:

> "A motorist facing the yellow light is entitled to enter the intersection and having thus entered the intersection legally is entitled to proceed through regardless of a change in the traffic signals from yellow to red during the course of his passage through the intersection. He does not have to attempt to stop since he has the same rights as those of the motorist facing a green light and may continue to proceed through the intersection regardless of the change in the traffic signal from yellow to red during the course of his passage."

The court went on to say:

> "Therefore, if you find that the defendant Davis entered the intersection while faced with a yellow light he had the right-of-way and, therefore, your verdict should be for the defendant, if you find that the plaintiff proceeded into the intersection while faced, even though while faced with a green light, but further finding that the defendant entered the intersection while faced with a yellow light. This is a change in the law of this state as understood by motorists, lawyers, judges and others, going back for some years, because the previous law was that yellow meant caution, to proceed with caution, there's been a change in the statute which permits now, one who enters an intersection on a yellow light to proceed through as if he had the green light. In other words, you are lawfully within an intersection if you enter on a yellow light. However, if that yellow light changes to red before you enter the intersection even though you saw it yellow before you entered the intersection then you do not have the right-of-way and you are not lawfully within the intersection. So the issue in this case with respect to liability is to determine the color of

the light as it faced the defendant Davis as he entered the intersection. And, of course, the intersection in this case, his entering the intersection would be controlled by his passing the curbline of the western edge of Route 1. As he crossed the western boundary of Route 1 he would be entering that intersection."

Further in the instructions, and with respect to Mr. Shaver, the court told the jury:

"In determining whether or not the plaintiff, Mr. Shaver, exercised reasonable care and caution before entering the intersection you are to consider whether or not he looked out for traffic lawfully proceeding within the intersection. If you find that the plaintiff did not see what he must have seen had he looked, you should assume that the plaintiff either imprudently did not look when it was his duty to look or that looking he saw and then adventured to make the crossing in the face of its obvious peril. Consequently, if you find that he did not look for the traffic proceeding within the intersection in a lawful manner, that is, the other traffic proceeding lawfully within the intersection, or looked but did not see which would have been obvious to him, or looked and attempted to make the passage in the face of the obvious peril, and that such action caused or contributed to the happening of this occurrence then your verdict should be for the defendant Mr. Davis. But, obviously, if you find that the defendant was not lawfully within the intersection, that is, that he entered the intersection on a red light, then the defendant is guilty of negligence and there is no responsibility on the plaintiff at all to look or to see him if the defendant was not lawfully within the intersection. Of course, I should modify that by saying that if he did observe that Mr. Davis was unlawfully within the intersection and he could avoid the accident then, obviously, he must do that.

> "But because one has the green light that does not mean that one can just barge through without observing the intersection at all, he has to act as a reasonably prudent, as a reasonable prudent person would act faced with a green light under the circumstances which you heard described in this case."

Objections made by appellants' counsel at the conclusion of the instructions were, we are satisfied, sufficient to preserve for appeal the issue of whether there was error in the instructions which explained to the jury the rights of a motorist who enters an intersection on a yellow light. The court made no changes in its instructions following the statements by counsel of their objections.

It is quite obvious that in giving his instructions Judge Rasin was guided by the opinion of this Court in *Klarman v. Haraszti*, 24 Md. App. 483, 332 A. 2d 291 (1975). In our opinion in that case, we said, at 484:

> "We hold that a motorist facing the yellow light is entitled to enter the intersection and having thus entered the intersection legally is entitled to proceed through regardless of a change in the traffic signal from yellow to red during the course of his passage."

With respect to the specific facts and record in the trial of that case, we said, at 490, that the trial court should have granted a requested instruction which said:

> "If you find the plaintiff entered the intersection while the traffic light for him was yellow, then your verdict must be for the plaintiff as a matter of law for the proximate cause of the collision, then, would be the action of the defendant.making a left turn."

For what we held to be error we reversed the judgment of the Superior Court of Baltimore City against the driver who claimed that he entered the intersection on the yellow light, and remanded the case for a new trial. In doing so we

rejected his contention that the trial judge should have directed a verdict in his favor. We pointed out that there was conflicting evidence on the question of whether the appellant entered on a yellow light or on a red light, and that conflict presented an issue for the jury.

The Court of Appeals granted certiorari to this Court and heard the case on appeal. That Court agreed with our mandate reversing the judgment and remanding the case for a new trial, but held that our statement of the rule did not go far enough. In its opinion, *Haraszti v. Klarman*, 277 Md. 234, 352 A. 2d 833, filed 5 March 1976, the Court of Appeals, in an exhaustive opinion written by the late Judge O'Donnell, agreed that the 1971 amendment to the statute had, indeed, changed the law applying to a motorist who enters an intersection on a yellow light. That Court, summarizing, said at 252-253:

> "Thus, to the extent that the rights of a motorist proceeding on a steady yellow signal may be equated with those of one proceeding on a green signal, each such motorist, although entitled lawfully to so proceed, must nonetheless exercise due care in both entering, and in transiting, an intersection.

> "The fundamental distinction lies, as we see it, in the fact that a motorist, proceeding on a green signal is not obligated to anticipate that another driver facing a red signal will ignore it and unlawfully intrude into the intersection, *Baltimore Transit Co. v. Putnam*, 250 Md. 19, 23, 241 A. 2d 586, 588 (1968); *Schwiegerath v. Berger*, 237 Md. 68, 70, 205 A. 2d 290, 291 (1964); nor is he under any duty to anticipate that the green signal controlling his movement will turn to red, or that a motorist on an intersecting highway will, during his passage, receive a green signal to proceed. A motorist about to enter an intersection upon a yellow signal is forewarned that the signal controlling his travel is about to turn red and that vehicles on the

intersecting thoroughfare are about to obtain a green signal authorizing them to lawfully proceed."

The Court stated its holding at 253:

"We hold that even though a motorist, facing a steady yellow light, may 'lawfully' enter an intersection, he must nonetheless exercise due care when entering and traversing the intersection as does a motorist who enters on a green signal."

The Court of Appeals pointed out that this Court had failed to engraft upon the rule, as we stated it, the requirement that the motorist's entry into the intersection be made with due care. It commented, however, that we had inferentially recognized that requirement in our discussion of the evidence.

Appellee argues that the jury could have found that the accident was caused by Shaver's failure to use due care in entering the intersection, even with a green light. This could be so, but we have no way of knowing the basis of the jury's verdict. If it could have resulted from erroneous instructions, we must reverse the judgment.

Appellee contends that the instructions were proper. He points to the instruction (given as applying to Shaver) that a motorist with a green light has a duty to use due care; then to the instruction that a motorist who enters an intersection on a yellow light is entitled to proceed as if he had a green light; and concludes by suggesting that the instructions applied the same duty of care to both.

We cannot assume that the jury engaged in the same exercise in roundabout logic, in the face of the court's clear and unqualified instruction that

"* * * if you find that the defendant Davis entered the intersection while faced with a yellow light he had the right-of-way and, therefore, your verdict should be for the defendant * * *."

which was soon followed by the conclusion:

"So the issue in this case with respect to liability is to determine the color of the light as it faced the defendant Davis as he entered the intersection."

The trial judge failed to engraft upon those statements of the rule, the requirement that Davis's entry into the intersection be made with due care. In that failure he erred, as we did in *Klarman v. Haraszti, supra*. Because of the error, appellants are entitled to a new trial.

> *Judgment reversed.*
> *Case remanded for a new trial.*
> *Appellee to pay costs.*