## VALENCH *v.* BELLE ISLE CAB COMPANY, INC.

[No. 213, October Term, 1949.]

*Decided July 19, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Foster H. Fanseen* and *Philip S. Ball* for the appellant.

*Theodore Sherbow,* with whom was *James J. Lindsay* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

On March 16, 1949, around 6:40 P.M., Mrs. Catherine L. Valench was a passenger in a taxicab owned by the Belle Isle Cab Company, Inc., which was operated by its chauffeur, Phillip S. Lee, east bound on Lombard Street, in Baltimore City. When the taxicab approached Light Street there was a street car, operated by the Baltimore Transit Company, which was stopped and was taking on and discharging passengers. The taxicab stopped about five feet behind the street car and when the operator of the street car had finished taking on and discharging passengers the door was closed. The driver of the taxicab then moved "directly behind the right front door of the street car". At that time the traffic light was red for east bound traffic. The taxicab was then about "a foot and a half" south of the street car, and about three and one-half feet north of the south curb of Lombard Street. Light Street is 71 feet wide from curb to curb, with a sidewalk on each side of the street, approximately 12 feet wide from the curb to the building line. Lombard Street is 42 feet wide from curb to curb, with a 10 foot sidewalk, from the curb to the building line, on each side of the street. The traffic at this intersection is controlled by four automatic signals, located on each corner. The light switches from green to amber, to red, and the amber holds for three seconds on all four lights.

Lee, the operator of the taxicab, testified that when the light turned green for east bound traffic on Lombard Street he could not see north on Light Street because the street car blocked his vision. He said that the street car moved slowly and that he was attempting to pass the street car and he did not see an automobile, owned and operated by Lawrence Medlin, traveling south on Light Street until it was "past the street car when he hit me". When he first saw the car driven by Medlin it was a matter of inches away. He saw it and the accident happened at the same time. His headlights were burning. He testified that there was an amber

light for two or three seconds and he waited until the amber light had cleared and the green came on, and then he started to move. He testified: "I guess we were fifteen feet (15') into the intersection of Light Street, and Bang! * * * Well, it all happened so quick, sir. As I say, it was more like a flash: he came through and hit, all at the same time, he was going at that rate of speed; and the minute I saw him I hit the brakes and we hit, all at the same time."

Mrs. Catherine L. Valench instituted suit in the Baltimore City Court against the Belle Isle Cab Company, Inc., and Lawrence B. Medlin. Each defendant appeared and filed the general issue plea. The case was submitted to the jury, and it rendered a verdict of $1,000.-00 against both defendants. The Cab Company filed a motion for judgment *non obstante veredicto,* or for a new trial. The lower court granted the motion for judgment *n. o. v.* and entered a judgment in favor of the Cab Company, from which judgment the plaintiff appeals. Medlin did not appeal from the judgment.

The only question in the case is whether the operator of the taxicab, at the time of the accident, was guilty of negligence, and if he was, the court committed an error in granting the motion for judgment *n.o.v.* and entering up a verdict in favor of appellee.

We have said so often that it has become trite, that if there is any evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence will be left to the jury. *Cogswell v. Frazier,* 183 Md. 654, 658, 39 A. 2d 815. And this is the law when the court considers the question of negligence on a motion for judgment *n.o.v.*

"The Court, in deciding whether to grant demurrer prayers or motions for judgments *n.o.v.* resolves all conflicts in the evidence in favor of the plaintiff and assumes the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right of recovery."

*Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 532, 59 A. 2d 313, 315.

It is provided by section 141, Article 66½, Supplement of the Code, 1947, as follows:

"(a) Green alone or 'Go.'

"(1) Vehicles facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. All vehicles shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited.

"(2) Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.

"(b) Amber alone or 'Caution' when shown following the green or 'Go' signal.

"(1) Vehicles facing the signal shall stop before entering the nearest crosswalk at the intersection, but if such stop cannot be made in safety a vehicle may be driven cautiously through the intersection."

A green light does not give an operator of a motor vehicle the right to enter an intersection irrespective of traffic conditions. An automobile may lawfully be in the intersection at the time, and it may "be driven cautiously through the intersection". If this were not so, all traffic in the intersection when the light turns from green to amber would be trapped by oncoming traffic which had just been given the green light, or "Go" signal. An operator of an automobile, when given the green or "Go" signal at an intersection, is required to use due care and caution to see that traffic in the intersection is such that he can proceed with safety. He must regard and heed actual traffic conditions, even though he has a green or "Go" signal. If a motorist enters an intersection blindly, without anticipating traffic in the intersection, he is guilty of negligence.

The testimony of Lee, the operator of the taxicab, was sufficient to go to the jury on the question of negligence. It could not be brushed aside because it was contradicted by other testimony in the case. It is apparent from

his testimony that he was in the act of passing the street car, which completely blocked his view north on Light Street, when the accident happened; and at that time the taxicab was about 12 feet east of the west curb of Light Street, which was corroborated by the testimony of a policeman who came on the scene after the accident. Lee drove past the street car and blindly into the path of the oncoming traffic. His testimony alone was sufficient to send the case to the jury.

"It has always been the law that a pedestrian or a vehicle starting across an intersection with a favorable signal has the right to complete the trip, even if the light changes in the middle of the passage. *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, at page 29, 190 A. 768." *Caryl v. Baltimore Transit Co.*, 190 Md. 162, 168, 58 A. 2d 239, 242.

*Sklar v. Southcomb*, 194 Md. 626, 630, 72 A. 2d 11, 12, involved an accident which happened at Cold Spring Lane and Dolfield Avenue, in Baltimore City. There was a funeral procession traveling west on Cold Spring Lane. Automobiles were stopped on the south side of Cold Spring Lane, facing north, as well as automobiles on the north side of Cold Spring Lane, facing south. The operator of the Southcomb automobile proceeded north and passed to the west side of the automobiles stopped at Cold Spring Lane, and he could not see traffic coming from the east. He nevertheless entered the intersection on a green light and collided with an automobile operated by Sklar in the funeral procession. This court said: "When Southcomb attempted to pass the double line of waiting cars his view was obstructed by them and this may tend to explain his failure to observe the funeral procession which was plainly visible to all the other witnesses. Even though the light was in his favor, he was under an obligation to yield the right of way to vehicles already in the intersection." In that case the driver could not see to his right, and did not know if there was any traffic in the intersection. In the case at bar Lee could not see to his left and did not

know if there was any traffic in the intersection. In the former case Southcomb was negligent, in this case Lee was negligent.

It would have been perfectly easy for Lee not to have passed the street car until it had gotten to the center line of Light Street, where he would have had a perfect view of all traffic traveling north on Light Street. Instead of doing this he ran blindly by the street car when it was on the west side of Light Street and caused the accident which resulted in the injury to the appellant in this case.

It was argued by the appellee that Medlin entered the intersection unlawfully and because of this he is not to be considered as in the intersection; and, therefore, the operator of the taxicab was not under a legal duty to anticipate that he was actually in the intersection. This argument is too subtle and mystic for this court to consider. Medlin's automobile was not a phantom, it was really and actually a physical automobile.

*Judgment reversed, with costs, and judgment on verdict reinstated for $1,000.00, with interest from Dec. 16, 1949.*