KATZEL, ET AL. *v.* CLARK ET AL.

[No. 61, September Term, 1957.]

56

*Decided December 16, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Stanley B. Frosh,* with whom were *Frosh & Smollar* on the brief, for the appellants.

*Thomas A. Lohm* for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an automobile collision case which is somewhat unusual in its facts. The principal issue is contributory negligence, upon which ground the defendants' motion for a directed verdict was granted at the conclusion of the plaintiffs'

evidence. Judgment was entered by the Circuit Court for Montgomery County for the defendants for costs, and the plaintiffs appeal.

The plaintiffs are William Lewis Katzel, a minor seventeen years old at the time of the accident, and his father. William was driving a car involved in the collision which was apparently owned by him but was registered in his father's name. The defendants are John W. Clark and his wife, Mrs. Vera Sybil Clark, who owned the other car involved in the collision. That car was being driven by Mrs. Clark. For brevity and simplicity, William Lewis Katzel will be referred to below as "the plaintiff" and Mrs. Clark as "the defendant".

The accident occurred in bright daylight on a sunny afternoon. It happened at the intersection of Connecticut Avenue and the East-West Highway, in Montgomery County. There was evidence which showed or tended to show the following facts:

At this intersection Connecticut Avenue is a six-lane, north-south highway with three lanes for traffic each way. These lanes are separated by a median grassy strip. The East-West Highway is described in the testimony as an undivided, four-lane highway, which on the east side of the intersection has two lanes for westbound and two lanes for eastbound traffic. Neither the testimony nor the exhibits give a very clear idea of this road on the west side of Connecticut Avenue and of the number of lanes for traffic coming to the intersection from the west. It seems, however, that the northerly (or innermost) lane for traffic approaching from the west is opposite the southerly (or inner) lane for traffic approaching from the east, and it appears fairly clearly that a vehicle proceeding west in the southerly lane of westbound traffic on the East-West Highway cannot proceed on that Highway west of Connecticut Avenue without moving into the adjacent (northerly) lane.

There are two large overhead traffic signs a little east of the intersection. The sign over the southern westbound lane has an arrow at its left side pointing left (south) and the words "Left Turn Only"; the sign over the northern lane has a sign reading "Thru and Right" and an arrow pointing straight down at its right side. There are curved arrows painted in the

southerly westbound lane indicating a left turn, and there are arrows pointing straight ahead in the northerly westbound lane.

The plaintiff approached the intersection driving his small car in the westernmost of the southbound lanes on Connecticut Avenue. His speed (as to which he was supported by two police officers in a patrol car following about three car lengths behind him) was approximately 25 miles an hour. The speed limit was 30 miles an hour. Traffic was stopped for a traffic light at the intersection in the easterly and center southbound lanes on Connecticut Avenue as the plaintiff drove along the clear westerly lane. When he was about twenty feet from the intersection the traffic light turned green and he continued at the same speed as before towards and into the intersection. Traffic to his left began to move when the light changed to green. One of the police officers in a car following the plaintiff "noticed the nose of another vehicle passing the lane of traffic that was just starting up on * * * [his] left", and the collision followed immediately. The plaintiff testified that he glanced to his left as he entered the intersection, then looked straight ahead and did not see the defendant's car until the time of the impact.

The defendant approached the intersection from the east. She had as passengers in her car a friend, the friend's child and her own child. The defendant was in the left-turn-only lane. She was following two trucks, each of which moved into the intersection when the traffic light turned in their favor and then made the left turn. The defendant followed them into the intersection, she says, on the green light. She claims not to have seen the overhead "Left Turn Only" sign, because she was trying to keep the children in the back of the car from interfering with her view through the rear-view mirror, because she was watching the trucks ahead and because the trucks were too high for her to see the overhead sign. However, she admitted that when she was in the intersection she realized—apparently from seeing a sign at the side of the road—that she was in the wrong lane—that is, the left-turn lane—when she wished to continue straight west. In spite of her realization of her error, she did not make the left turn, fearing that, as she was not familiar with the area, she might get lost. Instead,

she stopped in the intersection, waited until a car in the northerly eastbound lane of the East-West Highway made a left turn in front of her into the northbound portion of Connecticut Avenue. She then sought to move into the northerly, westbound lane of the East-West Highway in order to continue westward. She gave some hand signal to indicate what she was about to do. [It seems impossible that such a signal could have been seen by anyone alongside her on the East-West Highway or at her right in the southbound portion of Connecticut Avenue.]

The defendant did not see the plaintiff's car until just about the instant of the collision, though a moment before it occurred her companion saw the other car and gave a quick warning of its approach. The defendant slammed on her brakes, but her car rammed the plaintiff's car very close to its left front headlight. The point of collision was about fifteen feet east of the west curb line of Connecticut Avenue and about fourteen or fifteen feet south of the northern curb line of the East-West Highway.

The trial judge considered *Valench v. Belle Isle Cab Co.,* 196 Md. 118, 75 A. 2d 97, controlling. There (196 Md. at 123, 75 A. 2d at 99) Judge Grason, speaking for the Court, said: "A green light does not give an operator of a motor vehicle the right to enter an intersection irrespective of traffic conditions. An automobile may lawfully be in the intersection at the time, and it may 'be driven cautiously through the intersection.' If this were not so, all traffic in the intersection when the light turns from green to amber would be trapped by oncoming traffic which had just been given the green light, or 'Go' signal. An operator of an automobile, when given the green or 'Go' signal at an intersection, is required to use due care and caution to see that traffic in the intersection is such that he can proceed with safety. He must regard and heed actual traffic conditions, even though he has a green or 'Go' signal. If a motorist enters an intersection blindly, without anticipating traffic in the intersection, he is guilty of negligence."

In the *Valench* case the car which the cab driver failed to see was proceeding across a street intersection in a lawful direction and was in a proper part of the street. That is a

fact which is not present in the instant case, and this difference raises the question of the foreseeability of the defendant's presence and of her attempted maneuver which brought her to the point where the collision occurred.

The question of foreseeability has been discussed by this Court in several recent cases of alleged negligence or contributory negligence. In *Sanders v. Williams*, 209 Md. 149, 152, 120 A. 2d 397, 398, we said: "As is true of primary negligence, one measure of contributory negligence is the need, in a given situation, to anticipate danger. Presence or absence of reasonable foresight is an essential part of the concept. One is charged with notice of what a reasonably and ordinarily prudent person would have foreseen and so must foresee what common experience tells may, in all likelihood, occur, and to anticipate and guard against what usually happens. On the other hand, one is not bound to anticipate every possible injury that may occur or every possible eventuality." This was restated and largely quoted in *Hensley v. Pirzchalski*, 212 Md. 471, 474, 129 A. 2d 691.

It is familiar law that in passing upon a motion for a directed verdict, "[t]he question of contributory negligence must be considered in the light of all the inferences favorable to the plaintiff's case that may be fairly deduced from the evidence." *Baltimore Transit Co. v. State, Use of Castranda*, 194 Md. 421, 434, 71 A. 2d 442, 447; *Patapsco R. R. Co. v. Bowers*, 213 Md. 78, 88, 129 A. 2d 802.

The *Valench* case applied Section 141 (a) (1) of Article 66½ of the Code (1947 Supp. to the 1939 Edition, Section 157 (a) (1) of Article 66½ of the 1951 Code). That Section provides that "Vehicles facing the [green or 'Go'] signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. All vehicles shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited." The latter sentence was controlling in the *Valench* case.

In that case, the cab company contended that the car with which the cab collided had entered the intersection illegally and hence was not to be considered as in the intersection, and

that the cab driver was, therefore, not under a legal duty to anticipate that the other car was actually in the intersection. This argument was rejected as "too subtle and mystic" and it was pointed out that the other car "was not a phantom, it was really and actually a physical automobile."

No contention comparable to that "subtle and mystic" contention is made in the instant case. The evidence indicates that the defendant's car entered the intersection lawfully, but that the defendant then elected to undertake a prohibited maneuver. Was the plaintiff bound, as a matter of law, to anticipate that she might do so?

In our judgment, the evidence, when viewed most favorably from the plaintiff's point of view, would have been sufficient to warrant the jury in finding that the defendant's illegal maneuver was negligent and that it contributed directly to the happening of the accident. It would also have warranted a finding, we think, that the plaintiff was not bound to anticipate such a maneuver. It seems to be a fact that the defendant's car was somewhat out in the intersection when the plaintiff got the green light at a point some twenty feet or possibly more north of the intersection. Though his view of traffic coming west on the East-West Highway was obstructed by cars alongside him, and though he did not actually see the defendant's car until the moment of impact, we do not think that the minds of reasonable men could not differ as to his being guilty of contributory negligence. There had been time in which any westbound car that had entered the intersection on the green light might have completed a proper movement through the intersection either straight ahead in the northern lane or turning left in the southern; and traffic alongside of the plaintiff seems to have begun to move south. Indeed, if the defendant had completed the turn which was the only authorized move from the lane in which she was, it would seem possible to find from the evidence that the collision would not have occurred; and in such an event the jury might likewise have found that the plaintiff's failure to observe her car was not a proximate cause of the collision.

We think that the evidence does not require the conclusion that the plaintiff, in the language of the *Valench* case, en-

tered the intersection blindly, without anticipating traffic in the intersection. That case establishes that one may not do so with impunity, even though he has a green light. It is also to be observed that the *Valench* case states that a car lawfully in the intersection may be driven cautiously through. It does not hold that one may enter an intersection lawfully and may then proceed with impunity to violate a traffic regulation which prohibits his going straight through and requires him to turn in one direction or another, nor does it mean that another driver, on getting a green light, may enter an intersection only at his peril.

Whether or not the plaintiff ought to have seen the defendant's car, whether or not his failure to do so was a proximate cause of the accident, and whether or not he was negligent in entering the intersection are questions which we think should have been submitted to the jury. See *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194, in which one taxicab entering and proceeding through an intersection on a green light was struck by another which entered against a red light. The second cab was not visible to the driver of the first in time to avoid a collision. It was held that excessive speed on the part of the first cab was not a proximate cause of the accident since its driver had no reason to anticipate that the driver of the other cab would ignore the adverse traffic signal. In that case the court quoted (at p. 480 of 163 Md.) from *State v. Washington, B. & A. El. R. R. Co.,* 130 Md. 603, 612-613, 101 A. 546, 549: "It is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

A number of the boulevard cases involve the question of proximate cause, and similar reasoning is there applied. See *Sun Cab Co. v. Cusick,* 209 Md. 354, 121 A. 2d 188, and *Schwartz v. Price,* 215 Md. 43, 136 A. 2d 749, in which Judge Henderson said: "So far as contributory negligence on the part of the plaintiffs is concerned, the driver of the favored

vehicle is entitled to assume that an unfavored vehicle will yield the right of way, and the fact that he did not see it is not controlling. Cf. *State v. Marvil Package Co.,* 202 Md. 592, and *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174. As we have pointed out in a number of cases, a failure to see on the part of the favored driver can hardly establish a causal connection, when if he had seen the unfavored vehicle before it entered the intersection, he could have properly assumed that it would stop and yield the right of way as required by the boulevard law. *Rinehart v. Risling,* 180 Md. 668; *Shriner v. Mullhausen, supra* [210 Md. 104]."

We think that the trial court properly excluded evidence of the failure of the two defendants, the Clarks, to file suit against the plaintiff. Its evidentiary value, if any, seems very remote.

In accordance with the views as to contributory negligence above expressed, the judgment will be reversed and the case remanded for a new trial.

> *Judgment reversed, with costs, and case remanded for a new trial.*