BALTIMORE TRANSIT COMPANY and THORNTON *v.* PUTNAM, ETC.

[No. 224, September Term, 1967.]

*Decided May 10, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN and SINGLEY, JJ.

*Gerald N. Klauber* and *Joseph N. Karey* for appellants.

*Alvin Solomon* for appellee.

MARBURY, J., delivered the opinion of the Court.

The accident involved in this case occurred on September 14, 1962, at 5:45 p.m. during daylight hours on a clear day when the streets were dry in Baltimore City at the intersection of Paca and Saratoga Streets. The plaintiff-appellee, Walter C. Putnam, was operating his vehicle, a 1962 Plymouth, in a northerly direction in the east curb lane of Paca Street when it was struck from the side by a bus owned by the defendant-appellant, Baltimore Transit Company, and operated by the defendant-appellant, Alfred W. Thornton, Jr., which was traveling in an easterly direction in the south curb lane of Saratoga Street.

At the intersection where the accident occurred, Paca is a one-way street northbound having five lanes, each of which are ten feet wide, and Saratoga is a two-way east-west street accommodating two lanes of traffic in each direction. The point of impact was four feet north of the south curb line of Saratoga Street and eight feet west of the east curb line of Paca Street. This is a signal controlled intersection with an overhead hanging signal located over the approximate center of the intersection.

Suit was originally filed in the Baltimore City Court to recover damages sustained by the plaintiff resulting from both personal injury and property damage sustained by him, but on motion of the defendant, Baltimore Transit Company, the case was removed to the Superior Court of Baltimore City and the trial was conducted in that court. At the conclusion of the plaintiff's evidence the defendants moved for directed verdicts, which were denied. These motions were renewed at the conclusion of all of the evidence and were again denied and the case was submitted to the jury, which rendered a verdict in the amount of $7,500 in favor of the plaintiff to his own use and to the use of Calvert Fire Insurance Company, which had paid a portion of the damages sustained by the plaintiff under a policy of insurance issued on the plaintiff's vehicle.

Subsequently, the defendants duly filed motions for judgments n.o.v. or, in the alternative, for a new trial, which motions were denied and judgment absolute was entered for the plaintiff on May 5, 1967.

The first of the appellants' contentions that must be considered is that the testimony of William F. Hagenbucher should have been stricken from the record because it was "too vague, indefinite, speculative and evasive to constitute a basis from which the jury could arrive at a rational conclusion." In support of this proposition they point out certain discrepancies in the testimony of the witness which vary from the facts as they existed at the time of the accident. They also point to the fact that a number of times while he was being examined and cross-examined the witness stated that he did not remember certain details of the accident. At one point Mr. Hagenbucher was not clear as to the location of the signals controlling the intersec-

tion. At another point, he testified that the bus was yellow when it was actually green, and at a third point he stated that the appellee's car was in the lane next to the curb lane rather than in the east curb lane. Although these statements were not strictly accurate the errors that were present were not material and neither added to nor subtracted from the cases of either of the appellants or the appellee. Further, it must be remembered that approximately four years had elapsed from the time of the accident to the time that the witness was called to testify. The appellants had ample opportunity at trial to impeach the witness and taking into consideration the nature of the discrepancies and period of time that had elapsed between the happening of the accident and the trial, we conclude that Judge Prendergast was correct in refusing the motion to strike the testimony of the witness and in allowing it to be considered by the jury which had the opportunity of observing the witness testify and to judge his credibility.

The appellants argue strongly that the trial judge erred in not directing verdicts in their favor or in not granting their subsequent motions for judgments n.o.v. for the reasons that the appellants were not primarily negligent, and also that the appellee was contributorily negligent as a matter of law. The bases for this argument are the respective duties owed by motorists at a signal controlled intersection when the signal changes. This same point is raised in the appellants' argument that the court erred in its instructions to the jury. As the same propositions are involved in each argument they may be treated as one.

The procedure to be followed by vehicles at an automatic signal controlled intersection is prescribed by Code (1957), Article 66½, Section 193 (a) (1), (b) (1), and (c) (1), as follows:

> "(a) (1) Vehicles facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. All vehicles shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited.
> "(b) (1) Vehicles facing the signal shall stop before entering the nearest crosswalk at the intersection, but

if such stop cannot be made in safety a vehicle may be driven cautiously through the intersection.

"(c) (1) Vehicles facing the signal shall stop before entering the nearest crosswalk at an intersection or at such other point as may be indicated by a clearly visible line and shall remain standing until green or 'go' is shown alone."

In this case the governing factor was whether the bus was "lawfully in the intersection" when the appellee started forward on a green signal. A vehicle would be lawfully in the intersection if the driver had either entered it on a green light or if after seeing the signal change to amber he was unable to stop with safety, whereupon he would be permitted to continue "cautiously" through the intersection.

It is true that a driver may not drive blindly across an intersection simply because the signal is green. *Katzel v. Clark,* 215 Md. 54, 137 A. 2d 125; *Valench v. Belle Isle Cab Co.,* 196 Md. 118, 75 A. 2d 97. He must first allow traffic lawfully in the intersection to cross and then he may proceed with due care. *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127. On the other hand he is not under a duty to anticipate that another driver will disregard a red signal and intrude unlawfully into the intersection. *Schwiegerath v. Berger,* 237 Md. 68, 205 A. 2d 290; *Eastern Contractors v. State,* 225 Md. 112, 169 A. 2d 430.

At trial there was testimony by the bus driver and a passenger on the bus that the bus entered the intersection on a green light. The plaintiff Putnam testified that before starting forward when the light turned green in his favor he looked to his right and left and seeing nothing that would hinder his progress he moved into the intersection. There was also testimony by Hagenbucher, a disinterested witness, that the light turned red as the bus pulled away from the curb where it had discharged and taken on passengers and proceeded across against the signal. Here we have conflicting evidence and the case was properly submitted to the jury which ultimately decided to believe a version favorable to the appellee. The trial judge, in his charge to the jury, quoted Section 193, *supra,* and cited ex-

amples illustrating when the bus would be in the intersection lawfully and unlawfully. He further instructed them that before proceeding on a green signal that the plaintiff must have maintained a proper lookout and must have permitted lawfully crossing vehicles to cross the intersection before proceeding.

The appellants rely strongly on the case of *Valench v. Belle Isle Cab Co., supra.* In that case a cab driver, who was waiting beside a street car, proceeded blindly into the intersection when his view was obstructed by the street car and collided with another vehicle. The jury found for the plaintiff but the trial court granted a judgment n.o.v. On appeal this Court reversed the judgment, reinstated the verdict and entered judgment for the plaintiff holding that a jury question had been presented. The *Valench* case is readily distinguishable in that there the cab driver was found negligent for proceeding blindly into the intersection, whereas here according to the plaintiff there was no obstruction to his view and he could see whether the intersection was clear when he started to cross.

The case was properly submitted to the jury which was properly instructed as to the duties of drivers at an intersection controlled by automatic signals.

*Judgment affirmed, with costs.*