Radhica D. RAMRATTAN, et al.

v.

BURGER KING CORPORATION, et al.

Civ. No. Y–86–37.

United States District Court,
D. Maryland.

March 23, 1987.

Marvin Ellin, Baltimore, Md., for plaintiffs.

Susan T. Preston, Baltimore, Md., for defendants Burger King Corp., Pillsbury Corp., & Frank Flynn Bender.

Robert K. Nead, Baltimore, Md., and Richard E. Lee, Baltimore, Md., counsel for third-party defendant Michael Pickering.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiff Radhica Ramrattan suffered serious injuries when her car collided with a truck. She and the man driving her car have sued the truck driver and three corporate entities. Numerous motions in limine are now ripe for resolution. This Memorandum will address each motion seriatim.

### I. Plaintiff's Motion to Preclude Evidence of Annuities

██ Plaintiff Ramrattan alleges that she sustained permanent injuries which left her totally disabled, and that she will require round-the-clock nursing care. Defendants plan to produce an expert witness at trial to testify about the cost of an annuity which would provide an income over the remainder of plaintiff's life equal to the damages that are claimed. Plaintiff seeks an order precluding evidence regarding annuities, arguing that if she prevails on the issue of defendants' liability for the accident, then she will be entitled to a lump sum damage award, and not be obliged to purchase an annuity, and therefore evidence of the cost of annuities is irrelevant, prejudicial and misleading.

In diversity cases such as this, a federal district court must apply the substantive law of the forum state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937). Thus, Maryland law governs the question of whether the defendants may introduce evidence of the cost of an annuity in order to establish the present value of any future economic losses for which the plaintiff should be compensated.

Section 11–109 of the Maryland Courts and Judicial Proceedings Code provides for the use of annuities in personal injury actions:

(b) ... As part of the verdict in any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, the trier of fact shall itemize the award to reflect the monetary amount intended for:

(1) Past medical expenses;

(2) Future medical expenses;

(3) Past loss of earnings;

(4) Future loss of earnings;

(5) Noneconomic damages; and

(6) Other damages.

(c) ... (1) The court ... may order that all or part of the future *economic* damages portion of the award be paid in the form of annuities or other appropriate financial instruments, or that it be paid in periodic or other payments consistent with the needs of the plaintiff, funded in full by the defendant or the defendant's insurer and equal when paid to the amount of the future economic damages award.

Md.Cts. & Jud.Proc.Code Ann. § 11–109 (emphasis added). Subsection (b), requiring itemization of the damages award, applies only to cases in which the cause of action arose on or after July 1, 1986. Subsection (c), which explicitly authorizes the use of annuities in personal injury cases, has no such limiting language. Therefore, although the cause of action in the instant controversy arose on November 9, 1985, the day the accident occurred, this Court construes § 11–109 to allow the use of an annuity in this case.

The same day the Maryland legislature enacted § 11–109, it also enacted § 11–108 to provide a cap of $350,000 for noneconomic damages in personal injury cases wherein the cause of action arose on or after July 1, 1986. "Noneconomic damages" are defined as pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other nonpecuniary injury. Although the legislature chose to establish a clearly-defined date after which the $350,000 limit would take effect, it did not do so on the issue of the propriety of employing annuities in personal injury actions. This distinction makes sense, given that the common law prior to July 1, 1986, did not establish a cap for noneconomic damages, but did allow the use of annuities to provide compensation for future economic losses.

In *Baltimore Transit Co. v. Worth*, 188 Md. 119, 52 A.2d 249 (1946), Worth suffered injuries that left him totally disabled. The Maryland Court of Appeals affirmed defendant's introduction of testimony regarding the cost of an annuity that would provide Worth a given income per week in order to compensate him for lost future earnings. 188 Md. at 143–44, 52 A.2d 249.

Thus, § 11–109(c)(1) explicitly articulates what had already been available under the common law.

Defendants' evidence regarding the cost of annuities is relevant to the issue of plaintiff's future economic damages. Accordingly, plaintiff's motion to exclude such evidence is denied.

## II. Plaintiff's Motion to Preclude Evidence of the Cost of Nursing Home Facilities

Plaintiff Ramrattan seeks an order to preclude evidence regarding the cost of a nursing home facility for her future care. She argues that defendants have produced no evidence which suggests that the care provided in a nursing home would be superior to the care available through private duty nurses at plaintiff's residence. Plaintiff also contends that she is not obliged to mitigate future medical expenses by submitting to the least costly form of care. Defendants oppose plaintiff's motion to exclude on the ground that evidence associated with the expense of nursing home care is relevant to the issue of damages.

The Federal Rules govern the admissibility of evidence in this diversity case. *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147 (5th Cir.1981). For evidence to be admissible, it must be relevant, and its probative value may not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Rule 403, Fed.R.Evid. While the Federal Rules govern the admissibility of evidence, Maryland law prescribes the elements and measure of damages to be awarded, and thus defines what is relevant.

The fundamental goal of tort recovery is compensation of the injured party. A damages award should place the victim, insofar as money may do so, in the position she would have occupied absent the tort. *Tucker v. Calmar Steamship Corp.*, 356 F.Supp. 709, 711 (D.Md.1973). In a personal injury action, Maryland courts consider, *inter alia*, the medical and other expenses which, with reasonable probability, may be expected in the future. *Burke v. United*

*States,* 605 F.Supp. 981, 988 (D.Md.1985). Plaintiff Ramrattan will likely need full-time care for the rest of her life. Although she retains her cognitive abilities, she is dependent upon others to tend to her physical needs. Plaintiff would prefer to remain as independent as possible and, if she is capable, live at home with full-time attendants. Plaintiff will no doubt introduce evidence regarding the cost of such care, which information is relevant to the issue of damages.

Defendants want to introduce evidence of the cost of a nursing home facility, which would be less expensive than in-home care. Such information is also relevant to the issue of plaintiff's damages. However, it must be noted that plaintiff has no duty to "mitigate" her damages award by accepting a less costly form of medical care. One who sustains personal injuries has the duty to mitigate the extent of the injury by procuring appropriate medical attention. M.L.E. Damages § 29 (1985). Plaintiff has done so in this case. She is not required to mitigate the expense of whatever care she requires. *Cf. Burke v. United States, supra,* 605 F.Supp. at 994 ("A victim of another's tort is entitled, we think, to choose, within reasonable limits, his own doctor and place of confinement, if such care is necessary," *quoting Feeley v. United States,* 337 F.2d 924, 935 (3d Cir. 1964)).

■ As a general rule, defendant is entitled to offer proof of any facts which tend to reduce the amount of money required for just compensation to the plaintiff. M.L.E. Damages § 93 (1985). Defendants' evidence of nursing-home care would serve this purpose. Whether provision of nursing-home care is "just compensation" for a young woman who has been rendered quadriplegic is a question most appropriately left to the jury.

Plaintiff will not suffer undue prejudice by the evidence regarding nursing home facilities, nor will the jury be misled, because this Court will instruct the jurors that any damages they award the plaintiff must be designed to justly compensate her for her losses, and that neither the plaintiff nor the jury are bound by the least expensive form of future medical care. Accordingly, plaintiff's motion to preclude evidence of the cost of nursing home facilities is denied.

### III. Plaintiff's Motion to Preclude Evidence of Defendants' Accident Reconstruction

The collision at issue in this case occurred at the intersection of Centre Street and Park Avenue in Baltimore City. Traffic flow at the intersection was controlled by a green, yellow and red traffic signal. Plaintiff Ramrattan was a passenger in a car driven by plaintiff Pickering as they proceeded north on Park Avenue. The defendants' tractor-trailer was driven by defendant Frank Bender in an easterly direction on Centre Street.

Plaintiffs and an independent witness will testify that at the time of the collision and prior thereto, the light was green for northbound traffic on Park Avenue and was red for eastbound traffic on Centre Street. Defendants and another witness will testify that the light was green for eastbound traffic. Thus, it is unclear which party was the "favored" driver and thus had the right-of-way.

Defendants assert that the undisputed evidence will show that the tractor-trailer was three-quarters of the way through the intersection when the collision occurred. Plaintiffs' vehicle purportedly struck the truck just in front of the rear tandem wheels of the trailer portion of the truck. Defendants also contend that the truck entered the intersection before the car did and that the car made no attempt to brake prior to the collision. Plaintiff Pickering allegedly did not see the truck until his passenger screamed his name immediately prior to the accident occurring.

Based upon sight distances and speed of the respective vehicles, defendants' accident reconstruction experts have made calculations to determine how much time Michael Pickering had from the moment he could first see the tractor-trailer until the point of impact. Under their construction of the facts, Pickering would have had

three to four seconds within which to react and stop his vehicle. Plaintiffs argue that this evidence is inadmissible under the Maryland Boulevard Rule. Defendants contend the evidence will show that Pickering would have been able to see the truck when he was sufficiently far from the intersection to prevent the accident. Obviously, if Pickering could see the truck, then the truck driver could see plaintiffs' car.

The Maryland Boulevard Rule applies to intersections controlled by automatic traffic signals. *Eastern Contractors v. State*, 225 Md. 112, 123, 169 A.2d 430 (1960). Under the Boulevard Rule, the driver facing the green light is "favored", and the driver facing the red light is "unfavored." The unfavored driver has an absolute duty to stop at the red light and yield the right of way to drivers approaching the intersection on the favored road. *Thompson v. Terry*, 245 Md. 480, 486, 226 A.2d 540 (1967). If the unfavored driver fails to yield, enters the intersection, and a collision results, the unfavored driver is negligent as a matter of law. *Kopitzki v. Boyd*, 277 Md. 491, 495, 355 A.2d 471 (1976). The favored driver has no duty to anticipate that the unfavored driver will disregard a red light and intrude unlawfully into the intersection. *Balto. Transit Co. v. Putnam*, 250 Md. 19, 23, 241 A.2d 586 (1967). However, the driver with the green light cannot enter the intersection oblivious to other traffic and conditions then existing. *Haraszti v. Klarman*, 277 Md. 234, 251, 352 A.2d 833 (1976).

Plaintiff argues that the accident reconstruction experts' testimony is inadmissible because application of the Boulevard Rule does not turn upon "nice calculations of speed, time and distance:"

> The relative rights of travellers on the two intersecting roads are not to be held to depend on nice calculations of speed, time and distance lest the obvious and essential purposes of the boulevard rule to accelerate the flow of traffic over the through highway at the permitted speed, without interruption, be frustrated. The favored driver has a right to assume the unfavored driver will stop and yield the right of passage and therefore, in most

instances, even though the favored driver does not see the unfavored car he will not be guilty of negligence proximately causing the accident for, if he had seen it he could, unless put on notice to the contrary, have assumed it would stop.

*Harper v. Higgs*, 225 Md. 24, 31, 169 A.2d 661 (1960). The prohibition of such calculations depends on two factors. First, that the Boulevard Rule operated in plaintiff's favor. Second, that the favored driver could not have been expected to make the close calculations:

> The prohibition against making *nice calculations* does not prevent a jury and judge from making *all calculations of every nature;* the prohibition pertains only to those close, hair-splitting calculations which cannot be expected of a reasonably prudent favored driver when immediately confronted by an intrusion upon his right of way. Where the times and distances are great, the calculations are no longer "nice," and the prohibition is inapplicable.

*Goosman v. A. Duie Pyle, Inc.*, 206 F.Supp. 120, 127 (D.Md.1962) (emphasis in original), *rev'd on other grounds*, 320 F.2d 45 (4th Cir.1963).

In the instant case, each driver claims that he had the green light. Thus, this Court may not preclude defendants' accident reconstruction evidence on the ground that the Boulevard Rule prohibits it. The jury might find that the Boulevard Rule does not apply. If the truck driver entered the intersection on a green or yellow light, then he had the right to proceed through, even if the light changed to yellow or red in the middle of his passage. *Valench v. Belle Isle Cab Co.*, 196 Md. 118, 124 (1950); *Haraszti v. Klarman, supra*, 277 Md. at 249, 352 A.2d 833. He was obliged to proceed with due care in his entry and passage through the intersection, *Haraszti*, 277 Md. at 250, 352 A.2d 833, and plaintiff, if approaching the intersection when his light turned green, also was required to exercise due care in traversing the cross-street. The evidence regarding how many seconds plaintiff had between first seeing the truck and the time of im-

pact may be probative of the parties' exercise of due care. With appropriate instructions to the jury, such evidence would be admissible. Accordingly, plaintiff's motion to preclude this evidence is denied.

### IV. Plaintiff's Motion to Exclude Evidence Regarding the Use of Seatbelts

■ Defendants seek to present evidence or mention that the plaintiffs were not wearing seat belts at the time of the accident. Plaintiffs have moved to preclude this evidence, arguing that Maryland law prohibits the use of such evidence to show either contributory negligence or failure to mitigate damages.

The state legislature recently passed a law requiring mandatory seat belt use. The statute explicitly states that the failure to wear a seat belt may not be used as evidence in most personal injury actions:

(g) Failure to use a seat belt.

(1) Failure of an individual to use a seat belt in violation of this section may not:

(i) Be considered evidence of negligence;

(ii) Be considered evidence of contributory negligence;

(iii) Limit liability of a party or an insurer; or

(iv) Diminish recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle.

(2) ... a party, witness, or counsel may not make reference to a seat belt during a trial of a civil action that involves property damage, personal injury, or death if the damage, injury, or death is not related to the design, manufacture, installation, supplying, or repair of a seat belt.

Md.Transp.Code ann. § 22–412.3(g) (Supp. 1986). This Act took effect on July 1, 1986.

Prior to July 1, 1986, Maryland common law provided that failure to use a seat belt was not evidence sufficient to support a finding of contributory negligence. *Cierpisz v. Singleton,* 247 Md. 215, 227, 230 A.2d 629 (1967). In addition, failure to wear a seat belt was not relevant under the doctrine of avoidable consequences. The Maryland Court of Appeals cited with approval a North Carolina case which held that failure to wear a seat belt did not justify invoking the avoidable consequences doctrine:

[A]voidable consequences generally arise after the wrongful act of the defendant. That is, damages may flow from the wrongful act or omission of the defendant, and if some of these damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable....

The seat-belt situation does not fit the doctrine of avoidable consequences because the failure to fasten the seat belt occurred before the defendant's negligent act and before the plaintiff's injury.... The same considerations ... which reject the proposition that a motorist's failure to fasten a seat belt whenever he travels is negligence impel the rejection of the theorem that such a failure should reduce his damages. If there is no duty to fasten a seat belt, such a failure cannot be held to be a breach of the duty to minimize damages....

[Moreover, the] problem of conjectural damages cannot be dismissed lightly when the question is what would have been the extent of the injury had the seat belt been used and what happened because the seat belt was not used.

*Rogers v. Frush,* 257 Md. 233, 241–42, 262 A.2d 549 (1970).

Because seat belt use is not relevant to issues of plaintiffs' contributory negligence or mitigation of damages, and defendants have offered no other explanation for its relevance, this Court will grant plaintiff's motion to preclude defendants from presenting any evidence or mentioning at trial the plaintiffs' failure to wear seat belts.

### V. Defendants' Motion to Exclude Hearsay Statements Made at the Scene of the Accident

Defendant Frank Bender stated at deposition that after the accident, he was ap-

proached by three individuals who accused him of negligently operating his vehicle:

Q. What happened next when you were standing there and Toy was in the truck, getting his paper work together and making these calls?

A. Three different people approached me from behind me and told me three different things.

Q. Okay.

A. One gentleman told me I ran a red light, the other gentleman told me I was speeding and the other gentleman told me I was sleeping.

Deposition of Frank Bender at 92. Defendants anticipate that plaintiffs will attempt to introduce these statements at trial, and defendants have moved for an order excluding them as hearsay.

Bender's deposition statement is an admission by a party-opponent. Such admissions, if offered against the party, are not excluded by the rule prohibiting hearsay. Rule 801(d)(2), Fed.R.Evid. However, Bender's statement *contains* hearsay, thus the contents of his statement will be admitted only if they constitute an exception to the hearsay rule. Rule 805, Fed.R.Evid.

Plaintiffs argue that the bystanders' remarks to Bender fall within the "present sense impression" exception to the hearsay rule:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) **Present Sense Impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

Rule 803(1), Fed.R.Evid. Three requirements must be satisfied before this exception may be applied. The statement must describe or explain the event at issue, the declarant must have seen the event, and the statement must be substantially contemporaneous with the event.

The bystanders told Bender he ran a red light, he was speeding, and he was sleeping. These remarks describe conditions surrounding the accident, and thus satisfy the first requirement of Rule 803(1). The second and third requirements are more difficult to meet.

The only evidence that the declarants actually saw the accident is that they approached Bender and told him their perceptions of the event. Although corroboration is not required under Rule 803(1), the fact that the declarant probably observed the event—or was in a position to do so—is advanced as one of the reasons present sense impressions are trustworthy. 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(1)[01] at 803–76 (1985). Here, the bystanders are unidentified, and their capacities to observe can neither be substantiated nor attacked. In such cases, courts have hesitated to uphold the statement alone as sufficient evidence of declarant's opportunity to observe. Notes of Advisory Committee, Fed.R.Evid. 803. While this Court infers that if three individuals chose to tell Bender what had happened, then it is likely they saw the accident, there is some concern about the lack of independent evidence of declarants' abilities to perceive the event.

The third requirement of Rule 803(1), substantial contemporaneity of event and statement, negates the likelihood of deliberate misrepresentation or impairment of memory. The time factor in the instant case is currently impossible to evaluate. Defendants assert that "after the accident occurred, [Frank Bender] stopped, inspected the vehicle, spoke with Mr. Pickering and then walked to the rear of his tractor trailer. While he stood by the truck, three unidentified males came up to him" and made the statements described above. (Defendants' Reply Memorandum at 2.) This information does not reveal how much time elapsed between the accident and the declarants' statements. "With respect to the time element, [Rule 803(1) ] recognizes that in many, if not most, instances precise contemporaneity is not possible, and hence a slight lapse is allowable." Notes of Advisory Committee, Fed.R.Evid. 803. Plaintiffs contend that the lapse of time was slight enough to render the hearsay statements admissible as an utterance of present sense impression. This Court needs a more pre-

cise proffer of evidence concerning the amount of time that passed between the accident and declarants' remarks to Bender. Accordingly, a ruling on defendants' motion to exclude these statements will be reserved until trial.

## VI. Defendants' Motion to Exclude The Portion of the Police Report Referring to Bystanders' Statements

Plaintiffs want to introduce a police report that contains statements by individuals who witnessed the accident:

> Witnesses stated veh #1 was north on Park Avenue vehicle #2 was east on Centre veh #2 ran the red light and was struck by veh #1 passenger veh #1 was transported to MD General by ambo #4 treated for shoulder and chest injuries operator veh #1 transported to MD General by police. Treated for leg injuries. Both released.

Defendants wish to have this information excluded on the ground that it is hearsay, and it does not fall under either the business records or public records exceptions to the hearsay rule.

### A. *Business Records*

■ Rule 803(6), Fed.R.Evid., provides that records kept in the course of a regularly conducted business are not excluded by the hearsay rule. While the police report is certainly such a record, portions of the report do not satisfy the business records exception. "The element of unusual reliability of business records is said variously to be supplied by ... [among other factors] a duty to make an accurate record as part of a continuing job or occupation." Notes of Advisory Committee, Fed.R.Evid. 803(6). Unless the person who supplies the information is acting in the regular course of the business, the exception will not apply. "An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not." *Id.. See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6)[04] at 803–187 (1985); *Yates v. Bair Transport, Inc.,* 249 F.Supp. 681, 688 (S.D.N.Y.1965) ("if the report is offered to prove the truth of the statement contained therein, the statement must either have been made in the regular course of business of the person making it, or must have an independent ground of admissibility such as an admission, etc.").

In the instant case, the witnesses who supplied the information were not acting in the regular course of police business, thus the portion of the police report recording their statements is not admissible under Rule 803(6).

### B. *Public Records*

■ Rule 803(8), Fed.R.Evid., provides that public records and reports are not excluded by the hearsay rule. Public records are described as:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, ... or (C) in civil actions and proceedings ..., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The content of the witnesses' statements to the police officer are not activities of the office or agency, nor are they matters observed by the officer. Whether they are "factual findings resulting from an investigation" is a more difficult question.

The definition of "factual findings" has stirred controversy among the courts. In *Baker v. Elcona Homes Corp.,* 588 F.2d 551 (6th Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979), the court admitted a police officer's accident report under Rule 803(8). The report included the observation that "apparently unit #2 [the Valiant] entered the intersection against a red light." Under "contributing circumstances", the sergeant had checked the box provided on the form for failure of vehicle #2 [the Valiant] to yield the right-of-way and had also checked the boxes next to "driver preoccupation" for

both vehicles. 588 F.2d at 555. The court held that the conclusion that the Valiant ran the red light was a "factual finding":

[I]t is apparent that whether the light was red or green for one driver or the other at the time of the accident is distinctly a factual finding within the meaning of [Rule 803(8)]. . . . It is also clear from the construction of the rule itself that factual findings admissible under Rule 803(8)(C) may be those which are made by the preparer of the report from disputed evidence, as contrasted to those facts which are "matters observed pursuant to duty imposed by law" . . . called for under Rule 803(8)(B).

588 F.2d at 558. The police officer's findings were based on his observations of the physical circumstances at the accident scene and statements made by the parties. He apparently distilled this information to arrive at his conclusion that the Valiant ran the red light.

The officer's report also included a statement made by one of the parties, which statement the court found inadmissible under Rule 803(8). "The statement was neither an observation nor a factual finding of the police officer, although Slabach's statement, with other evidence, no doubt had a bearing upon the ultimate factual finding made by the officer." 588 F.2d at 559.

Other courts have refused to allow witnesses' statements in public reports to be admitted. *See John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 636 (3d Cir.1977) (to the extent that the National Transportation Safety Board reports consist of the statements of pilots or other witnesses regarding the accidents, they constitute inadmissible hearsay evidence); *Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir.1973) (accident report statements attributed to other persons are clearly hearsay).

In the instant case, the police report reads, "Witnesses stated veh # 1 was north on Park Avenue vehicle # 2 was east on Centre veh # 2 ran the red light." The officer appears to be recording statements of witnesses, which several courts have held inadmissible. If the police officer in-

terviewed a number of witnesses, judged their credibility, observed the physical aspects of the accident scene, and made an independent conclusion, then the statement about who ran the red light might be admissible as a "factual finding". From the excerpt available to the Court, however, it appears that the officer simply recorded comments of the witnesses he interviewed. Such statements are inadmissible hearsay, and defendants' motion to exclude them will be granted.

## VII. Defendants' Motion for Redaction of Plaintiffs' Medical Records

■ Plaintiffs' medical records apparently contain references to which vehicle failed to yield the right of way, which vehicle ran the red light, or which vehicle caused the accident. Defendants request that all such references be redacted prior to trial.

Rule 803(4), Fed.R.Evid., provides that statements made for purposes of medical diagnosis or treatment are not excluded by the hearsay rule. Such statements include those "describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Statements in the plaintiffs' medical records concerning what caused the injuries are admissible, but statements concerning who ran the red light or the fault of the parties are not pertinent to diagnosis or treatment. Accordingly, they are inadmissible and must be redacted prior to introducing the records at trial.

## VIII. Defendants' Motion to Exclude Plaintiffs' Accident Reconstruction Evidence

Plaintiffs have named Robert Weiner to testify as an expert in accident reconstruction. Mr. Weiner is of the opinion that the tractor-trailer driven by defendant Bender had a red light at the time it entered the intersection. This opinion is based on testimony of witnesses and calculations of speed, distance and time. *See* Weiner Deposition at 45–46. Defendants' wish to exclude Mr. Weiner's opinion testimony on

the ground that it is based solely on the credibility of witnesses and, as such, invades the province of the jury.

Rule 702, Fed.R.Evid., permits a qualified expert to testify in the form of an opinion if the witness' "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Such opinion evidence is admissible even if it embraces an ultimate issue. Rule 704, Fed.R.Evid. However, if the subject matter is within the knowledge or experience of lay persons, expert testimony is superfluous. *Bartak v. Bell-Galyardt & Wells, Inc.,* 629 F.2d 523, 530 (8th Cir.1980).

Defendants contend that Mr. Weiner has done nothing more than evaluate the testimony of various witnesses to the accident to render an opinion concerning the ultimate fact in issue—which vehicle had the right of way. If this is the case, then Mr. Weiner's testimony does not satisfy Rule 702, which requires that the expert have a specialized knowledge which will assist the trier of fact. The jury is certainly competent to evaluate the credibility of various witnesses.

However, Mr. Weiner's opinion appears to do more than judge witness credibility. The portion of the deposition made available to the Court suggests that Mr. Weiner has made calculations based upon speeds and distances, as well as witness testimony. Indeed, this evaluation is akin to defendants' expert, who used sight distances and testimony about the vehicles' respective speeds to determine how much time plaintiff had between first seeing the truck and the point of impact.

"There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained lay[person] would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject." Notes of Advisory Committee, Rule 702. This Court will reserve judgment on the admissibility of both expert's testimony until trial. Accordingly, defendants' motion in limine to exclude is denied.

## ORDER

In accordance with the attached Memorandum, it is this 23rd day of March, 1987, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff Ramrattan's motion in limine to preclude evidence of the cost of annuities BE, and the same IS, hereby DENIED;

2. That plaintiff Ramrattan's motion in limine to preclude evidence of the cost of nursing home facilities BE, and the same IS, hereby DENIED;

3. That plaintiff Ramrattan's motion in limine to preclude evidence of defendants' accident reconstruction BE, and the same IS, hereby DENIED;

4. That plaintiff Ramrattan's motion in limine to preclude evidence regarding the use of seatbelts BE, and the same IS, hereby GRANTED;

5. That defendants' motion in limine BE, and the same IS, hereby GRANTED IN PART and DENIED IN PART;

6. That a copy of this Memorandum and Order be mailed to counsel.